Delivered December 9, 1890.

---

THE TEXAS & PACIFIC RAILWAY COMPANY V. JENNIE L. GEIGER.

No. 3258.

1. **Liability of Railway Company—Receiver—Case Adhered to.**—The facts pleaded and proved on which appellant's liability was claimed are substantially the same as in the case of Railway v. Johnson, 76 Texas, 421. The opinion in that case is adhered to.

2. **Liability of Railway Company for Injuries to Employe while Road was in hands of Receiver.**—A company or receivership operating a railway should be held responsible to an employe and others as fully for an injury resulting from a defect existing when the road was taken possession of by the company or receiver as for a defect occurring under the management of either. It was not error therefore to refuse

a charge that unless the receivers had had time to repair the road if defective when they took possession, the road would not be liable for an injury from such defect in the track.

3.   Same—Master and Servant—Railroad Employes.—It must be held that the servant in the employ of the railway is entitled in all cases to that degree of care from the master ordinarily due to the servant, and the servant is entitled to recover for an injury resulting from defective machinery or road without reference to the time the master has been in possession, unless the defect was one known to the servant, for the latter is entitled to believe that the master will not subject him to danger resulting from defective machinery or road, and it is not the duty of the servant to inspect.

4.   Same.—Should the rule insisted upon be conceded, that the receivers should not be liable unless time sufficient was allowed them to repair defects, still the facts would be no defense against the road for the injury while in hands of the receivers, the road being liable from having received from the receivers large sums in way of betterments which should have been applied to such claims.

5.   Practice—Charge of Court—Burden of Proof.—In suits involving issues of care and negligence of master and servant, where all the facts bringing about or attending an accident on the part of both parties are in evidence before a jury, the propriety of giving any charge upon the burden of proof may be questioned.   See discussion of the pleadings, testimony, and charges given and refused bearing upon the subject.

6.   Degree of Care or Negligence.—If there is negligence shown on part of party injured, it is for the jury to determine the degree as well as to determine whether it contributed to the injury.

7.   Statute Construed—Gross Negligence.—Article 2899, Revised Statutes, prior to the amendment omitting the word *gross*, provided: "When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, or hirer of any railroad * * * for the conveyance of goods or passengers, or by the unfitness, *gross negligence,* or carelessness of their servants or agents," an action for damages may be maintained by persons named.   It is clear that *receivers* in charge of and operating a railway are not, within the meaning of the statute, either its servants or agents.

8.   Same—Ordinary Care—Master and Servant.—For the negligence of a railway company in failing to keep its track in proper repair, although this must necessarily be done by its servants or agents, the company is liable to an employe who is injured by a defect therein which might have been obviated by the exercise of ordinary care; and if such injury result in the death of the employe it is liable to the persons to whom the statute gives an action for its failure to use that degree of care.   The same rule applies when the road is operated by a receiver.

9.   Verdict Not Excessive.—A verdict of $10,000 in favor of the widow was not excessive.   The deceased was twenty-nine years old, healthy, an engineer by profession, and earning $125 per month at the time he was killed.

APPEAL from Harrison.   Tried below before Hon. Frank B. Sexton, Special District Judge.

The opinion states the case.

*F. H. Prendergast,* for appellant.—1.   The court erred in sustaining plaintiff's demurrer to defendant's plea in abatement setting up that the road was operated by a receiver when Geiger was killed, and that the plaintiff must intervene in the cause where the receiver was appointed. Godfrey v. Railway, 27 Am. and Eng. Ry. Cases, 9.

2.   The court erred in refusing special charge asked by defendant that plaintiff could not recover if the road was being operated by Brown and

Sheldon as receivers at the time Geiger was hurt. This was error, because the order of the court discharging the receiver made the Texas & Pacific Railway Company liable only for judgments in favor of persons who intervened in the cause where the receiver was appointed. Godfrey v. Railway, 27 Am. and Eng. Ry. Cases, 9.

The act of Congress of March 3, 1887, does not apply to the Texas & Pacific receivership, which was pending when that act was passed. The sixth section of that act provides that the act shall not affect the jurisdiction over causes then pending (Missouri Pacific Railway v. Texas & Pacific Railway, 42 American and English Railway Cases, 35), and a State law can not give any authority to sue a receiver appointed by a Federal court. Hale v. Duncan, 7 Cent. Law Jour., 146; Wood's Ry. Law, p. 1656. So, then, the suit was not properly brought against Brown as receiver.

3. The court erred in refusing special charge asked by the defendant to the effect that if at the time Brown and Sheldon were appointed receivers the track of the Texas & Pacific Railway, including the portion where Geiger was hurt, was in bad condition, and so remained until Geiger was hurt, and if Brown and Sheldon had not had a reasonable time in which to repair said track, then the receivers would not be liable and plaintiff can not recover.

4. The court erred in refusing special charge asked by the defendant to the effect that the burden was on plaintiff to show that C. H. Geiger was acting with care in running his engine when he was injured, and in charging that the burden would be on the defendant to show that deceased was guilty of contributory negligence. Railway v. Crowder, 63 Texas, 504; Murray v. Railway, 63 Texas, 407; Railway v. Garcia, 75 Texas, 583; Railway v. Lester, 75 Texas, 60.

5. The court erred in refusing special charge asked by the defendant to the effect that if running the engine backwards increased the danger of its running off, and Geiger knew this fact, and the fact that the engine was running backwards was one of the causes of the wreck, then plaintiff can not recover.

6. The court erred in charging that if both the receiver and Geiger were guilty of negligence, that it is not the least degree of negligence on the part of Geiger that would prevent a recovery, but Geiger's negligence must have amounted to a want of ordinary care. This was error, because there was no evidence to justify the charge, and the same misled the jury.

7. The court erred in charging the jury that defendant would be liable if the death of Geiger was caused by the negligence of the receivers. This was error, because it was necessary to prove gross negligence to make the defendant liable.

The negligence complained of is a defective track, and to justify the charge it must be held either that such negligence was gross negligence or

that it was the negligence of the "proprietor, owner, charterer, or hirer of the railroad." Rev. Stats., article 2899, prior to the amendment of 1887. If this was gross negligence the judgment must be reversed, because the charge does not define gross negligence. Railway v. Kutac, 76 Texas, 477. It has been held in a number of cases where a passenger train was wrecked and a passenger sued that the bad condition of the track does not necessarily constitute gross negligence. Railway v. Shuford, 72 Texas, 169; Railway v. Mitchell, 72 Texas, 173; Railway v. Johnson, 72 Texas, 103. So, then, it should have been left to the jury to say whether the bad condition of the track constituted gross negligence. At any rate the court could not say it was gross negligence. Nor can the fact that the road bed was out of repair be considered the negligence of the owner, charterer, or hirer, but must be held to be the negligence of the servants or agents of the owner, and to hold the owner liable for the death under the statute then in force the negligence must be gross. The act of a corporation must be the act of " one representing it in its corporate capacity as a corporate officer, but not a mere ordinary servant or agent." Railway v. Cowser, 57 Texas, 306.

*Lane & Wilson* and *T. P. Young*, for appellee.— 1. Matter in confession and avoidance of the plaintiff's cause of action must be pleaded by the defendant. Mims v. Mitchell, 1 Texas, 443.

2. Where there is no evidence tending to prove an issue the trial judge should not submit the issue to the jury. Dodd v. Arnold, 28 Texas, 101.

3. The receiver was not compelled to operate the road when he took charge of it if the road bed and track were so insufficient as to make it dangerous to others for him so to do; and if he did operate it he must be held liable for damages to an employe which arose from the defects and without the fault of the employe. Railway v. Johnson, 75 Texas, 162.

4. Where the defendant pleads that the plaintiff was guilty of contributory negligence the burden of proof is on the defendant. Brown v. Sullivan, 71 Texas, 470; Randall v. Railway, 50 Texas, 254.

5. Unless in making out his case the plaintiff shows that he might have been at fault the defendant must aver and prove contributory negligence. Murray v. Railway, 73 Texas, 7; Railway v. Foreman, 73 Texas, 314; Railway v. Bennett, 76 Texas, 152.

6. The failure of the railroad company, by reason of a want of ordinary care, to provide a safe track is the neglect of the " owner of a railroad," and is such neglect as will entitle those who are the beneficiaries to recover damages arising from the death of the employe caused by such negligence. In such a case it can not be claimed that the plaintiff must show that the agents of the company who had charge of the track and who were to have it repaired were guilty of gross neglect. Railway v.

Hanks, 73 Texas, 324; Railway v. Kutac, 76 Texas, 177; Railway v. Culberson, 72 Texas, 378; Railway v. Dunham, 49 Texas, 188, 189; 62 Texas, 233.

STAYTON, Chief Justice.—This action was originally brought by appellee against Brown and Sheldon, who had been appointed receivers of the railway by the Circuit Court of the United States, to recover damages for an injury that resulted in the death of her husband while in the employment of the receivers as an engineer.

The receivers were discharged, and the railroad and all other property which had been in their hands was returned to the company prior to October 31, 1888. After the discharge of the last receiver, Brown, the action was dismissed as to him, appellant having been made a party defendant, against whom a judgment was rendered.

Appellant alleged that it was not liable in this action under the order of the Circuit Court of the United States sitting in and for the Eastern District of Louisiana pleaded—appellee never having intervened in the suits pending in that court; and a demurrer was sustained to that plea.

Appellant also asked a charge to the effect that if appellee's husband was injured while the railroad was in the hands of the receivers then the verdict should be in its favor, and this charge was refused. These two rulings are assigned as error.

The facts pleaded and proved on which appellant's liability was claimed are substantially the same as were those in the case of Railway v. Johnson, reported in 76 Texas, 421, and for the reasons given in that case we hold that there was no error in either of the rulings now complained of.

The facts are that the receiver was discharged, all property that had been in his hands returned to the company to which it belonged, with all betterments made by the expenditure of at least $2,300,000, net earnings of the road while in the hands of receivers. The property was situated without the jurisdiction of the court that had once assumed control of it, and its process could not reach it to enforce any judgment it might render; yet the proposition is reasserted that the court under these circumstances had the power to close the doors of all other courts against the claims of persons to whom appellant was liable;—if for no other reason, because of its reception of betterments made with net earnings which ought to have been applied to the discharge of claims arising during the receivership, and to free appellant and all the property it had received from the claim of any person having a just claim against it, unless such person should seek relief in that court.

Counsel for appellant in their brief say "that it is just for the Texas & Pacific Railway Company to pay the liabilities to the extent of the betterments, and no more; that an account must be taken to see how much this liability is, and the court that appoints the receiver is the only court that

can adjust the account. When the company can show that it has paid out on obligations incurred by the receiver an amount equal to the value of the betterments, then it must go henceforth acquit. A position so consonant with natural justice can not be denied, even though it should not agree with some of the previous positions taken by this court."

· There is no claim that appellant has paid out on liabilities incurred by the receivership a single dollar, nor is there claim that the sum for which appellant is thus conceded to be liable will or ever can be demanded to meet such claims or obligations.

. If there be no other ground for appellant's liability than the receipt of betterments made with net earnings of the receivership, when a sum is paid out on claims against the receivership equal to the sum thus expended appellant has a good defense in any court, which may be as fully and as easily shown in one court as in another.

If there ever was a receivership having control of appellant's property other than that appointed by the United States Circuit Court for the Eastern District of Louisiana, no such fact is pleaded. We find in the record what are termed *ancillary orders* made by Circuit Courts for the United States for districts within this State.

We suppose, however, that it is not contended that by an order made by a Circuit Court of the United States sitting in a district in this State the jurisdiction of a co-ordinate court sitting in a district of another State may be extended territorially and thereby made to attach to property having its *situs* here. The jurisdiction of such courts as to subject matter and territorial extent must be fixed by act of Congress.

The railway was in the hands of the receivers more than one year before the husband of appellee was killed, and the cause of the accident in which that occurred was alleged to be the defective condition of the railway track.

It is urged that "the court erred in refusing special charge asked by the defendant to the effect that if at the time Brown and Sheldon were appointed receivers the track of the Texas & Pacific Railway, including the portion where Geiger was hurt, was in bad condition, and so remained until Geiger was hurt, and if Brown and Sheldon had not had a reasonable time in which to repair said track, then the receivers would not be liable and plaintiff can not recover."

There was no pleading setting up such a defense nor evidence introduced tending to show that the road might not have been put in good order after the receiver took possession if defective at the place when he received it, and it may be doubted if such a matter could be considered at all under the pleadings.

If the purpose of this action had been to fix a personal liability on the receiver operating the road under an order of court, there would be much force in the proposition contained in the charge.

The case of Batterson v. Railway, 8 American and English Railway

Cases, 127, seems to sanction the proposition that where one railway company receives a road from another in defective condition, from which, in course of its operation by the receiving road, an employe is injured, neither the operating road nor a corporation formed from the consolidation of that with another road could be liable for the injury unless the operating road had had time to remedy the defect before the accident occurred.

We doubt the correctness of such a rule, and deem it more in accordance with principle to hold that a company or receivership operating a railway should be held responsible to employes and others as fully for an injury resulting from a defect existing when the road was taken possession of by the company or receiver as for a defect occurring under the management of either. The degree of care required of either can not be made to depend on facts other than the nature of the employment and the relation of the injured person to the carrier.

It must be held that the servant is entitled in all cases to that degree of care from the master ordinarily due to the servant, and entitled to recover for an injury resulting from defective machinery or road, without reference to the time the master has been in possession, unless the defect was one known to the servant; for the latter is entitled to believe that the master will not subject him to danger resulting from defective machinery or road, and it is not the servant's duty to inspect.

If one railway company should receive a railway from another in obviously bad condition, it might well be held that employes take the risk of injury while operating such a road while in the course of repair from defects known to them, as they do in operating a part of a road in course of construction and known by them to be unfinished.

If a railway company should purchase new cars defective in construction and place them upon its road, and from this cause injury result either to a passenger or employe, would the company be heard to say in defense of an action brought to recover for an injury so resulting that it had not had time to remedy the defects? If not, why relieve from obligation because the injury may have resulted from a defect in the road existing when the company received it from another, or a receiver from the company represented by him?

If, however, the rule suggested could have application in any case, we are of opinion that it could not be applied in a case in which it is invoked by a railway company on account of whose negligence the defect may have existed, even though the injury occurred while the road was in the hands of a receiver and the company only liable on account of betterments.

It is claimed that "The court erred in refusing special charge asked by the defendant to the effect that the burden was on plaintiff to show that C. H. Geiger was acting with care in running his engine when he

was injured, and in charging that the burden would be on the defendant to show that deceased was guilty of contributory negligence."

Plaintiff's pleadings made her right to recover to depend on the defective condition of the road bed and track, and in addition to the general denial the answer set up that deceased was well acquainted with the condition of the track where the accident occurred, "and he was well aware of the dangers attending the running an engine backwards, especially at a high rate of speed; that said Geiger of his own will and volition ran said engine at a very high rate of speed, which materially increased the danger and was the cause of the wreck. The engine and track were both in good condition and neither of them caused the wreck."

All the facts attending the accident were brought out, and there was evidence showing that the track was in bad condition where it occurred and tending to show that it occurred from a defective rail; while on the other hand there was evidence showing that it was necessary at the place to run the train backwards, and tending to show that this was more dangerous than to run it in the usual manner. There was also evidence tending to show that the train was running at a rate of speed greater than allowed by the rules of the company, and that the train was not at that time running under special orders requiring a higher speed than allowed by the rules; but there was evidence tending to show that the train at the time was run under special orders which required a speed as great as that the train was making and higher than the published rules permitted.

The court correctly instructed the jury what the issues were, in what negligence consisted, and as to the general duty of persons or companies operating railways, and then instructed that if the derailment of the train from which the injury resulted was caused by rotten ties, bad iron, a broken rail or rails, which could have been discovered and remedied by the receiver by the exercise of ordinary care, then plaintiff was entitled to recover if the accident occurred without fault on the part of the deceased.

On the other hand, the jury were instructed that plaintiff was not entitled to recover "if the derailment of the train by which Geiger lost his life was caused by his negligence in running the train too fast, or by the want of other ordinary or reasonable care on his part under the circumstances at the time of said derailment, * * * and if the evidence brings you to this conclusion you will find for the defendant; or if the bad condition of the road bed, ties, iron, and track (if you should find from the evidence that any or all of them were in bad condition and caused the death of Geiger) could not have been discovered by ordinary care, you will find for the defendant."

The jury were further instructed that if deceased was running the train at a greater speed than the rules permitted that plaintiffs could not recover if that contributed to the accident or was one of the causes of the wreck, unless he was running at the time under a special order given by

some one authorized to give it directing a greater speed than allowed under the general rules.  The jury were also directed to find in accordance with the preponderance of the evidence.

The charge to which the assignment refers was: "The burden of proof is on the plaintiff to show that C. H. Geiger, at the time the wreck occurred, was not acting negligently in the rate of speed which he was running his train.  If the plaintiff has not shown that Gieger was acting with ordinary care at the time the wreck occurred plaintiff can not recover."

In cases of this kind, where all the facts bringing about or attending an accident tending to show negligence on the part of both parties are in evidence before a jury, the propriety of giving any charge upon the burden of proof may be questioned; but if any charge upon that subject ought to have been given that in question was properly refused, for it was misleading, in that the jury would have understood from it that defendant was entitled to a verdict if deceased was running the train at a greater speed than was prudent, although that may not have contributed in any manner to the accident.

Another charge as to burden of proof was given by the court in accordance with the rule stated in Railway v. Gorbett, 49 Texas, 573, which it is admitted was correct as a legal proposition, but it is contended that it was misleading, because the evidence showed that if deceased was negligent at all he had failed to use ordinary care.

The jury must have found that the injury resulted from defect in the road bed, ties, or rails, and that the rate of speed at which the train was running did not contribute to the accident, or that the train was running under special orders as to speed, or the verdict under the charges given would necessarily have been different.  The charge given as to burden of proof could not have affected these issues.

As before said, it seems to have been necessary, perhaps for want of turntable at some point, to run the train in front of the locomotive where the accident occurred; it is conceded while the track may have been defective that it was not so much so as to justify deceased in leaving his employment, and there was evidence tending to show that deceased was running at a speed directed by special order, and under this state of facts if there was negligence on his part its degree was for the jury, as was it to determine whether it contributed to the injury, and it was not error to give the instruction complained of, for it was not upon the weight of evidence.

The fifth charge requested by appellant was refused on the ground that it had been given in substance in the main charge, and an inspection of the record shows this to have been true.

The third charge requested and refused was in effect given, but with a proper qualification, in the tenth subdivision of the main charge.

The court charged that if the jury "believe from the evidence before you and under the preceding instructions that the death of the deceased, Charles H. Geiger, was caused by the negligence of the defendant (that is, the receivers), as alleged in plaintiff's petition, you may find for the plaintiff," etc.

Geiger was killed on December 20, 1886, and therefore this case must be decided under the provisions of article 2899, Revised Statutes, as it stood at that time, and not as it stands under the amendment.

The statute then provided, "when the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, or hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, *gross negligence,* or carelessness of their servants or agents," an action for damages may be maintained by persons named.

The contention is that there must have been *gross* negligence on the part of the receivers, and that the charge was erroneous because it made their negligence sufficient.

It is too clear that receivers in charge of and operating a railway are not, within the meaning of the statute, either its servants or agents. They stand, for the time, in relation to the property the same as does the corporation to which it belongs when in possession of and operating it, for all purposes necessary to be considered in this case.

For the negligence of a railway company in failing to keep its track in proper repair, although this must necessarily be done by its servants or agents, the company is liable to an employe who is injured by a defect therein which might have been obviated by the exercise of ordinary care; and if such injury result in the death of an employe it is liable to the persons to whom the statute gives an action for its failure to exercise that degree of care.

The same rule applies when a road is operated by a receiver, and such defects as are alleged in the petition in this case, though the result of the want of exercise of ordinary care by a receiver, fix liability. The negligence in such a case is the negligence of one who for the purposes under consideration stands as does the proprietor, owner, charterer, or hirer, and not as the servant or agent of such person or corporation.

It is urged that the judgment for $10,000 is excessive. Deceased was a healthy and robust man, twenty-nine years old, an engineer by profession, and earning at the time of his death about $125 per month. His life expectancy was thirty-six years, and under these facts we can not hold that a judgment in favor of his wife for the sum given is excessive.

It is also contended that the court should have granted a new trial on the ground that the evidence showed that the accident was caused by deceased running the train backward at a high rate of speed over a track that he knew was rough and dangerous. There was evidence from which

the jury might have found that the accident was thus caused, but there was evidence strongly tending to show that it was caused by a defective track, and that the rate of speed did not contribute to it.

Under the charge the jury must have come to the conclusion that the accident resulted from the cause last stated, for had they believed otherwise their verdict must have been different.

Finding no error in the proceedings which led to the judgment, it will be affirmed.

*Affirmed.*

Delivered December 2, 1890.