### FREEMAN v. FIELD.†

(Court of Civil Appeals of Texas. March 8, 1911. Rehearing Denied April 5, 1911.)

1. RAILROADS (§ 114*)—CONSTRUCTION—INJURIES—ACTIONS.

An allegation in a petition that a railway embankment without culverts was used by defendant receiver from February to June sufficiently charges him with notice of the defect.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 365–371; Dec. Dig. § 114.*]

2. RAILROADS (§ 113*)—OPERATION—PERSONS LIABLE FOR INJURIES—RECEIVERS.

A receiver using a railway embankment without the culverts required by Rev. St. 1895, art. 4436, is liable for an overflow caused by the defect; the company's duty being imposed on him by the act of Congress of March 3, 1887, c. 373, § 2, 24 Stat. 554 (U. S. Comp. St. 1901, p. 582).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 351–364; Dec. Dig. § 113.*]

3. DAMAGES (§ 112*)—MEASURE OF DAMAGES.

The measure of damages for the destruction of an unmatured cotton crop having no market value is the value of the matured crop at the nearest market; less the cost of finishing the cultivation and gathering and marketing the crop.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 281–283; Dec. Dig. § 112.*]

4. RAILROADS (§ 114*)—CONSTRUCTION—INJURIES—ACTIONS.

Where there was a conflict in the evidence as to whether a part of the crop sued for would have been destroyed by water in the absence of the railroad, a peremptory charge for the defendant as to such part was properly refused.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 365–371; Dec. Dig. § 114.*]

Appeal from District Court, Robertson County; J. C. Scott, Judge.

Action by Harry Field against T. J. Freeman, receiver. From a judgment for plaintiff, defendant appeals. Affirmed.

King & Morris and Doremus & Butler, for appellant. W. S. Bailey, H. S. Morehead, and Scott Field, for appellee.

RICE, J. Appellee Field owned a tract of land lying between the Big and Little Brazos rivers in Robertson county, through which the track of the International & Great Northern Railroad ran. There was a slough or depression running through the same, crossing the railway, flowing into the Little Brazos river. During the month of June, 1908, a crop of cotton planted on the west side of said track was inundated and destroyed by water alleged to have been backed up and held thereon by the embankment of said railroad company, on account of the failure of said company to place the necessary culverts and sluices in said roadbed where it crossed said depression to permit the escape of the water; and appellee, who was plaintiff below, brought this suit against appellant, the receiver of the International & Great Northern Railroad Company, to recover damages therefor, alleging that, prior

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

135 S.W.—68    † Application for writ of error dismissed by Supreme Court.

to the injuries complained of, appellant, who was receiver of said railroad company, was operating said line of railway theretofore constructed through plaintiff's farm, and had been operating and maintaining said railroad and track continuously as such receiver since the 27th day of February, 1908; that in constructing said roadbed across plaintiff's said tract of land, said company threw up an embankment, consisting of dirt and gravel to a height of from 4 to 15 feet, without placing any culverts or sluices under said roadway where the same crossed said depression or slough.

Defendant specially excepted to plaintiff's petition, first, because the statute of this state did not authorize or provide for suits against receivers for the alleged damages sustained by plaintiff from overflows occasioned by the alleged defects and insufficient openings in the roadbed; second, because the petition failed to allege any fact showing that the damage was occasioned by or resulted from any negligent act of said receiver, his agents, or employés incident to and resulting from the operation of said railway; third, because the petition fails to allege that T. J. Freeman, receiver, built and constructed said railroad embankment, and had failed to construct necessary and sufficient culverts and sluices under said roadbed, and fails to allege that said receiver had any notice of any such defects, and fails to allege any fact which would charge said receiver with such notice; fourth, because (a) the damages alleged by plaintiff are not the true measure of damages, and (b) the damages as alleged are speculative, too remote, indefinite, and uncertain. Defendant also urged a general denial, and, among other special answers, alleged that he had no notice of the defects asserted by plaintiff, and owing to the great amount of property in his hands as receiver it was not possible, nor in his power, in the short space of time from the 27th of February to June 8, 1908, to inform himself of the alleged defects in said roadbed, and that the time between said dates was not a reasonable time within which to inform himself thereof and remedy such defects.

There was a jury trial, resulting in a verdict and judgment for the plaintiff in the sum of $1,000, from which this appeal is prosecuted.

Appellant, by his several assignments, in effect, asserts that he, as receiver, is not liable for damages occurring during his operation of the road growing out of the failure of the railroad company to construct the necessary and sufficient culverts and sluices in its roadbed prior to his appointment as such receiver, and of which defect notice had not been brought home to him. Appellee, controverting this proposition, insists that a receiver of property under the administration of the federal court is, by law, required to operate and manage the same in accordance with the laws of the state where the property is situated, in the same manner that the owner would be bound by law to do; and under the laws of this state the owner is required to construct and maintain the embankments or roadbed of the railroad in condition to drain off the surface water as the natural lay of the land requires.

It was admitted that T. J. Freeman, as receiver, had been operating the International & Great Northern Railroad, under the administration of the United States District Court for the Northern district of Texas from February 27, 1908, to June 8, 1908, when the damage occurred. It was alleged and proven by the undisputed evidence that the International & Great Northern Railroad Company constructed its roadbed on the land of plaintiff and across the slough or depression thereon, without any openings or culverts whatever, and that the receiver, Freeman, maintained said roadbed unchanged, so as not to permit the surface water to drain and flow from the land, as the natural lay of the land required. The evidence further showed that on or about the 8th day of June, 1908, while the road was being operated by Freeman, as receiver, plaintiff's land was inundated by surface water, which was backed up and held thereon over his crops by said embankment, destroying the same, to his damage in the sum of $1,000, and that this injury would not have occurred in the event sufficient and necessary culverts and sluices had been constructed through said roadbed where said slough or depression crossed the same. It was also shown that the plaintiff's land, on account of said overflow, could not have been replanted during said season, because the water was held thereon by said embankment until it evaporated.

By article 4436, R. S. 1895, it is provided that "in no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires for the necessary drainage thereof." By the act of Congress of March 3, 1887, c. 373, § 2, 24 Stat. 554 (U. S. Comp. St. 1901, p. 582), it is provided that: "Whenever in any case pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do, if in possession thereof. * * *"

This is no longer an open question in this state. In Clark v. Dyer, 81 Tex. 343, 16 S. W. 1061, the above statute was passed upon and construed in connection with our own statute above referred to, and it was held that the evident purpose of the federal statute was to require of the receiver in the operation and management of the railroad the performance of the same duties required by

law of the owner under our statute. It is not only the duty of the owner to construct the necessary culverts and sluices to properly drain the land, but it is also his duty to maintain them. While we do not question the correctness of the decisions cited by appellant holding that, before the vendee of land upon which a nuisance existed prior to his purchase could be held in damages resulting therefrom, it is necessary to bring home notice to him of such nuisance, still we hold it not applicable to receivers operating railroads in this state under the statutes above mentioned. But, even if the doctrine is applicable, we think the allegations of plaintiff's petition to the effect that the receiver had been operating said railway continuously from February to June, without the necessary culverts and sluices under its embankment at the point mentioned, were sufficient to charge him with notice of such defect. It is said in Clark v. Dyer, supra: "A continuance of the embankment and a use of the same in its defective condition, by appellants, is an adoption of the nuisance, and renders them liable as originators of the wrong," citing authorities. See, also, T. & P. Ry. Co. v. Geiger, 79 Tex. 13, 15 S. W. 214; Bonner v. Mayfield, 82 Tex. 234, 18 S. W. 305; I. & G. N. R. R. Co. v. Bender, 87 Tex. 99, 26 S. W. 1047; Bonner v. Franklin Co-Op. Ass'n, 4 Tex. Civ. App. 166, 23 S. W. 317.

In Elliott on Railroads, vol. 1, § 576, it is said: "It accords with sound principle and reason that a receiver, exercising the franchise of a railroad company, shall be held amenable in his official capacity to substantially the same rules of liability that are applicable to the company while it exercises the same powers of operating the road, and this is the rule established by the great weight of modern authority," citing numerous cases.

Believing that the law imposed upon appellant, in the operation of this road, the same duty as was imposed upon the owner, we think he should be held liable for a failure of such duty when it results in injury to another, for which reason we think the court properly overruled appellant's demurrers. We therefore conclude that the assignments raising this question are not well taken.

The court gave the following charge: "If you find for the plaintiff, you will assess his damages at such sum as you believe from the evidence would be the market value of his said crop of cotton and cotton seed at the nearest market, had the same matured, less the cost of finishing the cultivation of said crop, and the picking, gathering, preparing for market, hauling to, and marketing said crops of cotton and cotton seed." This charge is assigned as error. It will be noted in this connection that the testimony showed that the crop was destroyed in June, at which time it was not matured, and the testimony shows it had no market value in such condition. Plaintiff in addition testified as to how much it would cost to finish making the crop, to pick, weigh, and prepare the same for market, and market the same in the nearest market, what the yield would have been, and the value of the cotton and cotton seed in the nearest market. This being the condition of the record, we think the charge above given was correct. Justice Gaines, in International & G. N. R. R. Co. v. Pape, 73 Tex. 501, 11 S. W. 526, indicated that such a charge as the one before us stated the proper measure of damages, where the crop was shown not to have any market value at the time it was destroyed. This rule has been followed in S. A. & A. P. Ry. Co. v. Kiersey, 81 S. W. 1045, M., K. & T. Ry. Co. v. Gilbert, 124 S. W. 434, and Putnam v. St. Louis S. W. Ry. Co., 43 Tex. Civ. App. 448, 94 S. W. 1102. For which reason we overrule appellant's assignments raising this question.

Appellant by his twelfth assignment contends that the court erred in refusing to give his peremptory instruction to the effect that, as the uncontroverted evidence showed that a portion of the cotton sued for would have been overflowed and destroyed by water whether said railroad embankment had been constructed or not; that therefore, as to such part of said crop as would have been so overflowed and destroyed, the jury should find for defendant. The court in its main charge told the jury that, if they should believe from the evidence that plaintiff's crop would have been destroyed, irrespective of whether the railroad had been built or not, then to find for the defendant; and also told the jury that if they should believe that a portion of plaintiff's crop would have been destroyed in the absence of the railway, then as to such portion they should find for the defendant.

We have examined the record carefully. There is a conflict in the evidence as to whether this crop would have been destroyed, irrespective of whether the railroad had been there or not. The testimony of the plaintiff and his witnesses conclusively shows that the failure to construct the culverts and sluices under the roadbed where the slough crossed the same caused the damage to the crop; whereas, there was evidence on the part of appellant controverting this theory. While the plaintiff testified that the crops on an acre or such matter of this land in the bottom of the slough had been overflowed and injured prior to the building of the road, still he testified that in a period of 40 years, during which time he had owned and worked this land, he was enabled to make a crop upon the whole area submerged after the water had subsided; that whenever it filled with water it would go down as the Little Brazos river would go down, and that all of the water in the slough would run out, except an acre or so in the lowest places, and

only in very wet years would he lose his crop, even on this acre or so. Another witness testified that before the railroad was built the water would all run out of this slough into the Little Brazos river, except about a quarter of an acre. This being the state of the evidence, we think it would have been error on the part of the court to have given the peremptory charge requested in behalf of appellant, for which reason this assignment is overruled.

The remaining assignments complain of the facts as insufficient to support the verdict. We differ with appellant as to this contention, believing that the evidence is abundant and ample in this respect.

Finding no error in the record, the judgment of the court below is in all things affirmed.

Affirmed.