**PHILLIPS PETROLEUM COMPANY,**
Appellant,

v.

**J. M. ARRINGTON, Appellee.**

No. 6814.

Court of Civil Appeals of Texas.
Amarillo.

Nov. 24, 1958.

Rayburn L. Foster and Harry D. Turner, Bartlesville, Okl., C. J. Roberts and Thomas M. Blume, Amarillo, for appellant.

Sanders, Scott, Saunders & Smith, Amarillo, for appellee.

CHAPMAN, Justice.

This is an action for damages for destruction of a 1956 growing wheat crop by blowing dirt, brought by appellee, J. M. Arrington against appellant, Phillips Petroleum Company, allegedly caused by the negligent failure of appellant to chisel alongside its pipeline running across the place being farmed during that year by appellee in wheat. The case was tried to the jury, the issues of negligence and proximate cause were answered against appellant, damages were found by the jury to be $2,972.50 and the court rendered judgment against appellant for that amount together with costs, and interest from the date of judgment.

The case is before us upon complaints of error of the trial court in overruling appellant's motion for instructed verdict, motion non obstante veredicto and motion for new trial because there were neither pleadings nor proof of a legal measure of damages in that appellee failed to plead or prove the cost of cultivating, caring for, harvesting and transporting to market the anticipated wheat. The pleadings relied on for the measure of damages were as follows: "If the defendant had not left the area adjacent to the pipeline in a loose condition, it would not have blown and caused the remainder of your plaintiff's field to be blown out and your plaintiff would have cut and harvested an additional 1,450 bushels of wheat, of the reasonable cash market value of $2,972.50." That amount was then prayed for in the prayer

for judgment. Proof was offered of sufficient probative force by which the jury was justified in figuring the number of bushels of wheat at 1,450 appellee would have made but for the loss from blowing found to have been caused by appellant's negligence. As further proof on the measure of damages appellee testified on direct examination as follows:

"Q. * * * do you know what the market value of wheat was at cultivating time there?

"A. I think it was around $2.05. That was the government loan; I couldn't say what the market on wheat was."

Before closing his case appellee was recalled and testified:

"Q. Now, here is a technical matter I want to clear up with you. Do you know what the market value of wheat was out there in that area?

"A. I think I do.

"Q. How much was it a bushel, John?

"A. $2.05."

The above is all the testimony we find in the record concerning the measure of damages by which appellee sought to recover except a conversation between appellee and Clay Carrithers, Manager of the Amarillo Division of the Tax and Claim Department of Phillips Petroleum Company, which included the county in which the wheat crop in controversy was located. Thus, we may say from the record before us that appellee relied for recovery on a loss of 1,450 bushels of wheat on 155 acres, because he tendered, in the alternative, a remittitur of $387.50, which would have been harvesting costs at $2.50 an acre on 155 acres. There is not even a suggestion in the record of harvesting costs except on the basis of $2.50 an acre.

The record shows there was some controversy as to the number of acres of wheat appellee claimed was killed by the blowing dirt. Mr. Carrithers testified in effect that he made a memo of appellee's claims when he came to his office and that he was then claiming a loss of 125 acres due to their pipeline construction. This testimony was offered for the purpose of impeachment when the evidence developed that appellee was claiming 155 acres destroyed. Then on cross-examination appellee asked Mr. Carrithers

"Q. Okay. He stated that the harvest of two-fifty an acre totaling $312.50 should be subtracted * * *. Right?"

"A. Right."

It is from this testimony just quoted that appellee contends he established the cost of harvesting in the proof of his measure of damages for recovery. To this contention we find ourselves unable to agree.

In 31 C.J.S. Evidence § 216, p. 948, the following textual statement is made that we believe applicable to the situation here under consideration: "Generally a party cannot make evidence for himself by his own declarations, and it is a well established general rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in evidence in his favor. Such declarations are not rendered admissible by the mere fact that they were made in the presence of, or in a conversation or correspondence with, the opposing party or his agent, in the absence of assent to their truth by the opposing party * * *."

Of practically the same tenor is the following rule stated in Vol. 1, McCormick and Ray's Texas Law of Evidence, Sec. 786, at p. 568:

"The declarations of a party to the suit may always be proved Against him by his adversary, under the rule as to admissions which is thus an exception to the hearsay rule. If evidence of the party's declaration is offered to prove the facts declared by the party-declar-

ant in his own favor, the evidence is hearsay and the admissions-exception is of course inapplicable. Unless the declaration comes within some other exception to the hearsay rule, the all-sufficient objection is the general hearsay principle. Rather unfortunately, however, the practice has arisen of objecting to the evidence as a "self-serving declaration." ·

We believe the above textual statements are supported by the following authority: Thomasson v. Davis, Tex.Civ.App., 74 S.W. 2d 557; Boone v. Moore, Tex.Civ.App., 246 S.W. 685; Commercial Standard Ins. Co. v. Billings, Tex.Civ.App., 114 S.W.2d 709; Firemen's Ins. Co. of Newark, N. J., v. Universal Credit Co., Tex.Civ.App., 85 S.W. 2d 1061; Cunningham v. Deist, Tex. Civ. App., 286 S.W.2d 192 (writ refused); Long v. Knox, Tex., 291 S.W.2d 292; Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628, 631.

Even closer in point to the facts of the instant case is the authority announced by a Connecticut appellate court in Ives v. Bartholomew, 9 Conn. 309, 312 wherein it said:

"I take the rule of law to be, that declarations of a party against his interest are always admissible in evidence. They may weigh little, or they may furnish strong, nay irresistible proof. Declarations in one's favour, strictly speaking, are not admissible at all. But where a witness is called to relate the conversation of a party, all which was said at the time, if required, must be testified. This rule rests on solid principle. A person is always presumed to speak favourably for himself, and never to allege any thing against his interest, unless it be true. For the same reason, where a person has stated a fact altogether in his favour, a witness never can be permitted to testify to that declaration: in other words, a party cannot make testimony for himself."

Accordingly, we believe very strongly that the testimony was improper for proving a necessary substantive fact, to-wit; a portion of the proper measure of damages. The statement was not under oath, it was made in presenting a claim, and it was made out of the presence of the jury and not subject to cross-examination. Under the facts of this case there was no necessity giving support to any right of appellee to rely on an exception to the self-serving hearsay rule because he was present in court at all times where he could have presented testimony of harvesting costs in the proper manner. But even if we should be wrong on our application of the law to the testimony under discussion the case will still have to be reversed because appellee failed in another necessary element of proving his measure of damages. We have searched the record carefully and have found not one shred of testimony as to the cost of marketing the anticipated wheat. The pleadings were based on the loss of 1450 bushels of wheat at the market price of $2.05 per bushel, a total of $2,-972.50. Even if it could be said that the tender of remittitur corrected the failure to properly and legally prove the harvesting costs there still would be no correct guide by which the maketing costs, a necessary item, could be deducted from the $2,972.50.

The measure of damages for wrongful destruction of a growing crop appears to be a well settled principle of law in this state. In 13 T.J. p. 49, Sec. 56, under "Crops" the text writer states: "Where a growing crop has been wrongfully destroyed, the proper measure of damages is the value of the crop just as it stood on the ground at the time and place of its destruction, such value to be determined by the probable yield of the crop and its reasonable market value when matured, less the cost of cultivating, harvesting and marketing."

Our Supreme Court, speaking as follows on the subject in the very early landmark case of International & G. N. R. Co. v Pape, 73 Tex. 501, 11 S.W. 526, 527, said:

"It seems to us that, as a general rule, the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market, and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crop with as much certainty as can be attained by any other method. But proof of the additional amount of cotton which the plaintiff would have made but for the overflow, and the value of such cotton when ready for market, without evidence as to the expense of cultivating, gathering, preparing it for and placing it in market, did not show the value of the crop at the time of the injury, and hence did not afford the proper means of increasing the plaintiff's damage."

The principles of law there announced have been clearly adhered to by the courts of this state right down to the last pronouncement on the subject. Galveston H. & S. A. Ry. Co. v. Borsky, 2 Tex.Civ.App. 545, 21 S.W. 1011; City of Paris v. Tucker, Tex.Civ.App., 93 S.W. 233; Texas Co. v. Lacour, Tex.Civ.App., 122 S.W. 424; Freeman v. Field, Tex.Civ.App., 135 S.W. 1073; Houston & T. C. R. Co. v. Wright, Tex. Civ.App., 195 S.W. 605; Bowman & Blatz v. Raley, Tex.Civ.App., 210 S.W. 723; Gerhart v. Harris County, Tex.Civ.App., 244 S.W. 1103 (affirmed 115 Tex. 449, 283 S.W. 139); Western Oil Fields Corporation v. Nowlin, Tex.Civ.App., 288 S.W. 554; Lufkin H. & G. Ry. Co. v. Bennett, Tex.Civ.App., 291 S.W. 270; International-Great Northern R. Co. v. Reagan, Tex.Civ.App., 36 S.W.2d 564 (affirmed 121 Tex. 233, 49 S.W.2d 414); Shell Pipe Line Corp. v. Harris, Tex.Civ.App., 68 S.W.2d 236; Krapf v. Lewis, Tex.Civ.

App., 217 S.W.2d 148; Schultz v. Harless, Tex.Civ.App., 271 S.W.2d 696.

In case of another trial we respectfully suggest that appellee should clarify whether the $2.05 per bushel testified to was the government's support price or the market price at the nearest market and that it would be well to offer testimony to the effect that it would have been unnecessary to chisel the wheat or in any other manner cultivate it before it was ready for harvesting or offer proof as to the expense attendant thereon if the testimony shows in another trial that it would have been necessary to chisel or cultivate it in any other manner. We would also respectfully suggest that if $2.05 was the government's support price it would be well to prove the cost of processing the wheat into the government loan, a necessary element in payment to the producer under a government wheat loan.

Judgment of the court below is reversed and remanded for another trial.