Matthew W. DIETZ and T. J. Yancey,
Plaintiffs-Appellees,

v.

CONSOLIDATED OIL & GAS, INC.,
Defendant-Appellant.

No. 79–1627.

United States Court of Appeals,
Fifth Circuit.

April 27, 1981.

Rehearing Denied May 20, 1981.

J. G. Hornberger, R. J. Goodman, Laredo, Tex., for defendant-appellant.

Lawrence A. Mann, Laredo, Tex., for plaintiffs-appellees.

Before TJOFLAT, POLITZ and HATCH-ETT, Circuit Judges.

TJOFLAT, Circuit Judge:

A jury rendered a verdict for plaintiffs in this diversity case. Defendant contends that the trial court erred in numerous evidentiary rulings, in its formulation of jury instructions, and in denying a motion for a directed verdict. We find no error and affirm.

## I

Lasker O. Hereford owned a farm in Webb County, Texas. In 1967, she assigned the mineral rights in the farm to Consolidated Oil and Gas, Inc. (Consolidated). In 1972, she leased the surface rights to T. J. Yancey and Matthew Dietz. Yancey and Dietz are farmers.

For a time, Yancey and Dietz and Consolidated enjoyed their respective interests in the farmland without incident. Then, in September of 1975, two things happened: Yancey and Dietz began planting onions and melons, and Consolidated, in connection with a new well, built a road and sludge pit. The road was constructed on three acres on which onions were to be planted. Consolidated paid Hereford, the landowner, $3,000 for the use of these acres. Hereford, in turn, paid this money to Yancey and Dietz to compensate them for the anticipated reduction in crop yield.

By mid-October, the road had been constructed, the sludge pit excavated, and the crops' cultivation completed. In the early morning hours of October 29, 1975, an unusually heavy rainstorm occurred. Water from the rainstorm washed down the road, rushing onto the farmland and flooding fifty-nine acres of onion crop. The rainstorm also caused the sludge pit to overflow onto thirty additional acres of onions and fifteen acres set aside for honeydew melons.

Yancey and Dietz surveyed the flooded farmland a few days after the storm and, as they testified at trial, were unable to determine whether the flooded crops had been damaged. An examination three weeks later, however, led them to conclude that the onion crops had been damaged.

Believing Consolidated responsible for their loss, Yancey and Dietz consulted an attorney, who attempted to negotiate a settlement with Consolidated. In the meantime, they planted the honeydew melons on the previously flooded fifteen acres. These honeydews failed to mature and could not be marketed.

Yancey and Dietz were unable to negotiate a settlement with Consolidated, and, on November 15, 1977, filed suit in Texas state court. Thereafter, the case was removed to federal district court.

In its answer to the complaint, Consolidated alleged that the two-year statute of limitations tolled on October 29, 1975, and, therefore, that the suit was time-barred. Consolidated also alleged that it had violated no duty to Yancey and Dietz. Furthermore, Consolidated argued, even if it had, the violation was not the proximate cause of the injury to the crops. Finally, Consolidated alleged that Yancey and Dietz were contributorily negligent in proceeding to cultivate the honeydew crop on the flooded land.

In this appeal, Consolidated asks us to enter a judgment of no liability pursuant to its motions for directed verdict. Alternatively, Consolidated contends that the trial judge committed reversible error in failing to charge the jury in accordance with it requested instructions, and in making several evidentiary rulings. We consider these contentions, none of which has merit, in inverse order.

## II

### Jury Instructions

#### A. Statute of Limitations

■ Consolidated first contends that the court incorrectly instructed the jury concerning the statute of limitations issue. In this diversity action, we must weigh Consolidated's argument under Texas law. *Goodbody & Co., Inc. v. McDowell*, 530 F.2d 1149, 1151 (5th Cir. 1976). The Texas Supreme Court has articulated the standard for determining when a cause of action for damages accrues:

> When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained. . . . If, however, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plain-

tiff's right—then, *be the damage however slight*, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.

*Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 353–355, 269 S.W.2d 336, 337–338 (Tex.1954), *quoting Houston Water Works Co. v. Kennedy*, 70 Tex. 233, 235, 8 S.W. 36, 37 (1888).

According to Consolidated, the above-quoted passage's application to this case requires dismissal if plaintiffs were aware or should have been aware of any damage, however slight, that took place more than two years prior to November 15, 1977, the day suit was filed. Consolidated offered as proposed special interrogatories to the jury the following:

> Do you find from a preponderance of the evidence that actual damage, however, [sic] slight, to the crops and land in question was sustained by the plaintiffs prior to November 15, 1975?

> .　　.　　.　　.　　.

> Do you find from a preponderance of the evidence that the plaintiffs or either of them knew or in the exercise of reasonable diligence should have known on or before November 15, 1975, that their crops and land had sustained damage, however slight?

Record Excerpts at 6.

The court rejected these interrogatories, and, instead, submitted the following:

> Do you find from a preponderance of the evidence that the plaintiffs or either of them knew or in the exercise of reasonable diligence should have known on or before November 15, 1975, that their crops had sustained damage?

Record Excerpts at 16. The jury answered, "we do not." *Id.* It is Consolidated's position that the court's failure to ask the jury to determine if plaintiffs were aware of any damage, however slight, was prejudicial error.

We cannot agree. In the first place, we think the court's question to the jury—that the jury ascertain whether Yancey and Dietz knew or should have known there was any damage before November 15—embraced all damages, even if only slight. In any event, Consolidated misinterprets the *Tennessee Gas Transmission* case. We think the Texas Supreme Court was simply saying that in certain tort cases, the defendant's actions themselves are a legal injury and the question of when economic injury occurred is irrelevant to when the cause of action arose. This case may or may not have involved such a tort, but since Consolidated failed to argue that it did—either here or in the court below—we do not consider the issue.

### B.  Damages

Consolidated next contends that the court erred in formulating its special interrogatories concerning the measure of damages. Again, we turn to Texas law, this time to determine what damages are available to a farmer whose growing crops are destroyed before harvest. *Brooks Transportation Co. v. McCutcheon*, 154 F.2d 841, 843 (D.C.Cir. 1946).

■ In Texas, "[t]here is no question but that ... where a partial injury to a growing crop is involved, the measure of damages is the difference between the value of the crop immediately before and immediately after the injury." *Shultz v. Harless*, 271 S.W.2d 696, 697 (Tex.Civ.App.1954). Texas courts have determined such value by subtracting the costs of bringing a crop to market from the probable value of a matured crop. *See Phillips Petroleum Co. v. Arrington*, 318 S.W.2d 694, 697–698 (Tex. Civ.App.1958).

■ The district court gave the jury the following special interrogatory concerning the damage to both the destroyed onion and honeydew acreage: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably compensate the plaintiffs for the damages [to the crops]?" Record Excerpts at 15–16. The court instructed the jury to approach this damages question as follows:

The proper measure of damage for the wrongful destruction of a growing crop is the value of the crop as it stood on the ground at the time and place of its destruction. The stage of growth of a crop is a factor to be considered in determining the amount which will compensate the injured parties for the loss suffered by the destruction of the crop. The jury should consider the probable yield of the crop under proper cultivation, the value of the yield when matured and ready for sale, the amounts expended on the crop before the destruction and the amount which probably would have been expended thereafter in cultivating, harvesting, and marketing the crop in determining the value thereof at the time of its destruction.

Supp. Record, vol. II at 405.

Consolidated contends that this charge is in error because it permits the jury to consider evidence other than that pertaining to the probable yield, the value of a mature crop, and the costs, actual or potential, of cultivation, harvesting and marketing. In particular, the court's charge allowed the jury to consider testimony probative of what a purchaser of crops in the ground would have paid for the crops the moment before destruction. According to Consolidated, the jury could not consider such testimony in arriving at damages, but instead should have been required to adhere to the mathematical formula of potential yield multiplied by estimated value per unit of yield less costs of marketing, cultivation and harvesting.

The Texas Supreme Court has stated, however, that the formula is only a "general rule" that *"in most cases* [will] give the value of the growing crop with as much certainty as can be attained by any other method." *International & G. N. R. Co. v. Pape,* 73 Tex. 501, 503, 11 S.W. 526, 527 (Tex.1889) (emphasis supplied). The reason for using this standard is that "a growing crop . . . is not usually subject to sale, and . . . there is ordinarily no market . . ." *San Antonio & A. P. R. Co. v. Kiersey,* 81 S.W. 1045, 1047 (Tex.Civ.App.1904), *rev'd on oth-*

*er grounds,* 98 Tex. 590, 86 S.W. 744 (Tex. 1905).

We think it beyond peradventure that the mathematical formula measure of damages was never intended by Texas courts to place a ceiling on damages, nor to state the only acceptable means of determining damages. Rather, the formula is merely one method for estimating the value of growing crops. *See Boyett v. Enders,* 456 S.W.2d 701, 702 (Tex.Civ.App.1970). As a general rule, the formula may well be the most accessible means of estimating damages, but we have been pointed to no authority suggesting that other evidence probative of value may not be used as well. In the case before us there was other evidence of value, and we do not believe the court erred in formulating instructions that permitted the jury to consider it.

C. Negligence

■ Consolidated submitted a number of special interrogatories that it believed were relevant to whether it was negligent. These interrogatories inquired (1) whether the flood was an "Act of God"; (2) whether the design and construction of the road and sludge pit were dictated by the husband of Lasker Hereford, owner of the land; and (3) whether damage was caused by a combination of the rain and Consolidated's negligence, if any. The district court, however, simply submitted interrogatories asking the jury whether Consolidated was negligent in constructing the road and the sludge pit and, if so, whether the negligence was a proximate cause of plaintiffs' injuries. Consolidated contends that limiting the interrogatories to these two questions was error.

We are unable to agree. Concerning the first requested interrogatory, the district court charged the jury that if plaintiffs' injuries resulted from an "act of God," they should find that defendant's negligence, if any, was not a proximate cause of plaintiffs' injuries. Supp. Record, vol. II at 404. The court's decision not to expound further on this issue with a separate interrogatory was hardly an abuse of discretion. *See*

*Reagan v. Sinclair Refining Co.,* 319 F.2d 363, 366 (5th Cir. 1963), *cert. denied,* 376 U.S. 956, 84 S.Ct. 975, 11 L.Ed.2d 974 (1964). As to the second requested interrogatory, we are unable to understand how an affirmative answer to it would have excused Consolidated from liability. The evidence is undisputed that Mr. Hereford, as Consolidated's contractor or employee, designed and constructed the road and sludge pit. It may be that an inference can be drawn from this evidence that he was negligent. But Consolidated has pointed us to no Texas law that would excuse it from the negligence of either an employee or contractor under these circumstances. Concerning the final interrogatory, we cannot conceive of its relevance to the issue of negligence or proximate cause, and Consolidated's brief suggests none. Thus, we hold that the district court's refusal to submit these interrogatories to the jury was proper.

### III

### Evidentiary Rulings

Consolidated contends that eight of the district court's evidentiary rulings constituted reversible error. We consider each of these alleged errors below.

■ The first purported error concerns consolidated's objection to the introduction of certain photographs of the flooded onion acreage. The date the photographs were taken was not established; thus, the basis for the objection was apparently that they were inadequately authenticated. *See* Brief of Appellant, at 11–14. At trial, however, plaintiffs offered to delay introduction of the photographs until the relevant date was established:

> [Counsel for Plaintiffs] Your honor, I would offer these into evidence at this time. If Counsel would prefer that we establish the date of this photograph more precisely at a later time, we can withhold it. But I think he has had an opportunity to look at it, and I think this witness has indicated that it does fairly depict what is there.

> [Counsel for Defendant:] Defendant would object until the proper predicate is laid, Your Honor.
>
> THE COURT: You are objecting to the offer?
>
> [Counsel for Defendant:] Yes, sir.
>
> THE COURT: Overruled. They will be admitted.

Supp. Record, vol. 1 at 35–36.

■ The photos had been identified by Yancey prior to their offer; the only arguably objectionable feature of this authentication was that the precise date of the photographs had not been established. The district court must have concluded from the quoted colloquy that Consolidated was attacking the offer on some ground other then plaintiffs' failure to establish that the photographs accurately portrayed the farmland at the time of the flooding, and since no other valid grounds appeared to exist, the court overruled the objection. This was not error. But even if it was error, reversal would not be warranted "absent a showing that substantial rights of the party were affected.... The burden of demonstrating that such rights were affected rests with the party asserting error." *Liner v. J. B. Talley and Co., Inc.,* 618 F.2d 327, 329 (5th Cir. 1980). Consolidated fails to suggest how any of its substantial rights were affected.

■ Consolidated's next three objections go to Yancey's testimony concerning the growing costs of the lost crops. Consolidated claims that Yancey's testimony was speculative and a mere estimate because Yancey stated that his figure may have been off "a dollar one way or the other," and because precise data may have been available from books of account that Yancey had examined sometime before trial. Supp. Record, vol. I at 119–120. None of this renders incompetent Yancey's testimony concerning growing costs. The books of account were obviously available to Consolidated on discovery, and could have been used to impeach Yancey's figures. But since Yancey was testifying only as to his recollection of growing costs, his testimony was admissible for whatever value it might

have had.[1] Yancey's testimony may have been sketchy, it may have been based on poor memory, and it may have been wrong—but being based on recollection rather than mere hypothesis and conjecture, it was not speculative.

▇ Consolidated next objects to Yancey's testifying as to the value of the growing crops the moment before their destruction. According to Consolidated, this was inadmissible opinion testimony based solely on speculation and conjecture. We disagree. The general rule is that "an owner is competent to give his opinion on the value of his property." *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975), *modified on other grounds en banc*, 575 F.2d 564 (1978), *cert. denied*, 424 U.S. 943, 99 S.Ct. 1218, 47 L.Ed.2d 349 (1979); *see also Justice v. Pennzoil Co.*, 598 F.2d 1339, 1344 (4th Cir.), *cert. denied sub nom.*, *McKinie v. Pennzoil Co.*, 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979) (landowner's testimony on value of his land is admissible). Consolidated, however, notes that "where the owner bases his estimation solely on speculative factors, the owner's testimony may be of such minimal probative force to warrant a judge's refusal even to submit the issue to the jury." *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d at 699. Consolidated argues that Yancey's estimate was based solely on speculative factors. The record does not bear this out. Yancey testified that he personally know of standing crops of other farmers that had been sold, and, also, that value of standing crops is often computed at twice the amount of growing costs. Supp. Record, vol. I at 130–131. Thus, his opinion testimony was based on more than naked conjecture, and we think the district court acted properly in

admitting it. "The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value, and as an interested witness, it is for the jury to evaluate the credibility of his testimony." *Berkshire Mutual Insurance Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967) (footnotes omitted).[2]

▇ Consolidated's next objection is to Dietz's testimony that if he could have sold the lost onions at $2.07 per bag—the average price he realized for his onions in 1975—he would have made a profit. Supp. Record, vol. II at 221–223. Without determining whether Consolidated's objection to this testimony should have been sustained, we think we can dispose of the objection on the ground that Consolidated has failed to bear its appellate burden of showing how admission of the statement was prejudicial. The jury's setting of damages at the level it did was plainly based on specific dollars-and-cents testimony in the record, and not on Dietz's statement that he would have made a profit had the flooded onion crop reached maturity.

▇ Finally, Consolidated objects to testimony that it paid 3,000 dollars for the three acres of onion field on which it constructed its road. Consolidated claims that unrebutted evidence offered at trial demonstrated that this money was paid to Mrs. Hereford and that no inference legitimately could be drawn that the money was to compensate Yancey and Dietz for their lost onion acreage. Even were the record to support this hypothesis, Consolidated is foreclosed from raising the point on appeal since it failed to object to this testimony at trial. Supp. Record, vol. I at 19.

1. Consolidated does not argue that Yancey's testimony was adduced to prove the contents of existing books of account. Thus, we do not here consider whether his testimony may have been subject to attack under the best evidence rule.

2. In this appeal, Consolidated seeks to discredit Yancey's opinion testimony by asking us (rather than the district court) to take *judicial notice* that any sales of growing crops on which Yancey based his opinion could not have been

comparable because of: (1) the length of the relevant growing season and (2) the size of the valley in which the Hereford farm was located. Supplemental Brief of Appellant, at 16. Of course, such evidence could have been presented to the jury. But even assuming that we could take notice of the growing season's length and the valley's size, we certainly could not judicially notice the inferences Consolidated implicitly asks us to draw.

## IV
### Sufficiency of Evidence

 Consolidated moved for a directed verdict at the close of plaintiffs' presentation of its case-in-chief and at the conclusion of its defense. It now argues that these motions should have been granted because the evidence was insufficient to support the jury findings in favor of plaintiffs. It is, however, "settled that in the absence of a motion for judgment notwithstanding the verdict made at trial this Court cannot examine the evidence for sufficiency...." *Delchamps, Inc. v. Borkin*, 429 F.2d 417, 418 (5th Cir. 1970). Since Consolidated failed to move for a judgment n. o. v. following the jury's verdict, we are without power to consider the merits of its contention. But even if we did have the power to review the sufficiency of the evidence, Consolidated would fare no better. The standard for determining evidentiary sufficiency was articulated by this circuit in *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc) (footnote omitted):

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

After careful review of the record, we have determined that the jury's verdict must be upheld under this standard. Therefore, the judgment of the district court is

AFFIRMED.