The Houston & E. T. R'y Co. v. Martha E. Adams et al.

(Case No. 1482.)

1. Damages.— Suit was brought in trespass to try title against a railway company, and to recover damages for destruction of fences and orchards, for fencing in twenty acres, and other items of damage, with prayer in the alternative, 1st, for restoration of the premises, for damages and injunction; or 2d, that if the railway company was entitled to have condemned a right of way, that it be set aside by metes and bounds. The plaintiff, it was shown, had conveyed by deed a right of way over the land to the company. *Held*,

(1) The admission of evidence showing the depreciation of the value of the entire property by reason of the location and construction of the road, connected with the fact that the greater part of the charge related to the condemnation of the right of way and measure of damages in such cases, all of which resulted in an inconsistent verdict, was error requiring a reversal of the judgment.

(2) The court should have charged the jury (the grant of a right of way being shown) that no damages could be recovered, either for the use of that right of way or for the depreciation in value of other land of appellees, or for any inconvenience to which plaintiff might be subjected, *provided*, the same did not result from the want of due care and skill in the location and construction of the road.

Appeal from Polk. Tried below before the Hon. Edwin Hobby.

Appellee Martha E. Adams, joined by her husband John H. Adams, sued appellant for the title and possession of a tract of land described in the petition as containing sixty acres, and alleged to have been the homestead of appellees and their children; that the land had for a number of years been used by them to support themselves and their family by means of the corn and cotton and produce raised therefrom; that appellees have no other means for a support; that the premises were well improved, having valuable orchards, shrubbery, shade and ornamental trees, fences inclosing the same, improved and cleared lands in cultivation, with pastures and buildings; that thirty-five acres thereof were under a fence, used as a farm, twenty acres being rich, black, lime land, and fifteen acres of light soil; that from the twenty acres appellees relied for a support for themselves and their children, being worth for agricultural purposes $300 per year; that the value and worth of the remainder of said premises was dependent on the said twenty acres remaining as a portion thereof, and nearly valueless to appellees without it. That appellant unlawfully, and for the purpose of injuring appellees, did seize said premises; did throw down and destroy the fences thereof; "did make highways of travel through said premises; did turn horses, hogs and cattle into appellees' fields, garden and orchards, destroying them; did dig ditches and make embankments of earth through said premises, and through the entire length of said twenty acres; did make ten feet cut through said premises; did lay cross-

ties and iron rails one thousand five hundred yards through and over said premises; did build five hundred yards of switches and side-tracks, a turn-table, a large depot and platform, a spacious boarding-house, family residence, kitchen and out-houses, all on said twenty acres; and did fence in said twenty acres, and convert the same to appellant's own use. Damages by the trespasses aforesaid, $10,000."

Appellees alleged that appellant could have located its depot at a more suitable place for itself and the public, where the approaches to it would have been over sandy soil; that to harass appellees, it located its depot and made the improvements on the twenty acres of land, which, owing to its tenacious character, position as to the adjacent town of Moscow, and the balance of the premises, caused appellant and the public to so use appellees' premises as to destroy the value of the same to appellees, to their damage $10,000.

Prayer in the alternative: (1) For restoration of premises, for damages and injunction. (2) If first not granted, then that so much of said premises as appellant may be entitled to have condemned as right of way under the law of eminent domain, be designated by metes and bounds; that appellees have judgment therefor, and for all damages that they have received by reason of appellant's said trespasses upon said premises; for injunction and general relief.

The defendant company then pleaded:

1. The general issue.

2. A grant by plaintiff of a right of way through the land, fifty yards wide, which it was occupying, and to which its road-bed and improvements were confined.

3. That after the conveyance to appellant of the right of way, and after it had run a line indicating where it would build its road, plaintiffs orally agreed that if appellant would locate its road and build its depot at the place on their land then pointed out by them, they would donate to it that portion of their land known as the "black land field," and would make it a conveyance thereof; provided it would reconvey to them certain lands previously conveyed to it by them, or by J. H. Adams; and that relying upon the agreement and contract, appellant had constructed its road and located its depot at the point selected and so pointed out, and offered to reconvey to them the lands, tendering to them in this plea such reconveyances. That it had constructed its improvements upon the land, at great cost and in good faith, and in reliance upon the contract, and plaintiffs should be compelled to perform their said contract specifically.

4. A plea in reconvention, alleging the necessity for it, and seeking the condemnation of the desired and stated amount of said land to appellant's use, upon its payment of the compensation therefor fixed by the judgment in said cause, if the court should hold it not protected by said verbal contract nor by the conveyance of the right of way. But that in no event ought its road-bed or other improvements upon the said land to be estimated in plaintiffs' favor in condemning the land, because the same had been built thereon in good faith, and in express reliance upon the conveyance and the verbal agreement aforesaid.

Appellees (plaintiffs below) demurred to so much of the answer of defendant as set up a parol contract to convey a part of the land to it, and so much of it as sought to condemn the land to its use. The court overruled these exceptions, and to this ruling plaintiffs excepted. They then denied generally and specially the allegation of the answers.

The verdict and judgment are shown in the opinion. The charge is too lengthy for insertion, but its general character is stated in the opinion.

*Hutcheson & Carrington,* for appellant.

*James E. Hill,* for appellee.

I. The finding of the jury is upon the issues joined between the parties, the admissions of appellees in their pleading, the evidence adduced upon the trial, and the charge of the court. The pleadings raised the following issues: (1) As to the validity of the right of way deed of fifty yards; this the jury found for appellant. (2) As to a verbal contract between the parties granting appellant's twenty acres of land; this the jury found in favor of appellees. (3) As to trespass by appellant upon appellees' property; this the jury found against appellant and assessed appellees' damages at $1,500. Appellant set up in its answer the right of way deed above referred to, alleging as follows: "And that the said grant gave defendant the right to so use and occupy a strip of land through said property fifty yards wide. That defendant has occupied and confined its road-bed, tracks and buildings to the strip of land so deeded to it by plaintiffs, fifty yards wide."

II. The charge of the court giving the text of the statute as to eminent domain did not "confuse the minds of the jury in endeavoring to apply it to the facts of the case."

III. There is competent legal evidence to sustain the verdict of

the jury, and this requires that the case be affirmed. Texas & St. Louis R'y Co. v. Willis, Roberts & Son, Tyler Term, 1882; Willis v. Lewis, 28 Tex., 191; Guerin v. Patterson, 55 Tex., 127; Stroud v. Springfield, 28 Tex., 676; Latham v. Selkirk, 11 Tex., 321; Ables v. Donley, 8 Tex., 336; 51 Tex., 553; 1 Tex., 340; 7 Tex., 587; 22 Tex., 42; 23 Tex., 83; 27 Tex., 241; 35 Tex., 28.

IV. Before a party can be heard to complain of the charge of a court, he must show that he excepted to the charge criticised, or tendered special instructions; and even then, to reverse a case, there must not only be in the charge a fundamental error, but it must have operated to the injury of the complaining party. G. H. & S. A. R'y Co. v. Delahunty, 53 Tex., 212; 42 Tex., 220; 2 Tex., 287; 10 Tex., 137; 12 Tex., 266; 22 Tex., 220; 28 Tex., 635; 40 Tex., 112; 44 Tex., 548; 49 Tex., 622; Hall v. Dotson, 55 Tex., 515 et seq.

V. A right of way deed will not protect a railway company in committing a trespass on property not embraced in the grant; neither would such company be protected by such deed, if in taking possession of the right of way it is done in such manner as to injure adjacent or other property. Pierce on Railroads, pp. 179, 180, 266.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by the appellees to recover the title and possession of a tract of land, and for damages alleged to have been caused by the appellant having taken possession thereof, and thereon erected a part of its railway and buildings appurtenant thereto. Many items of damage were set out in the petition, and in addition to the ordinary prayer for relief in such cases there was an alternative prayer, in the event the other relief was not granted, that so much of the land as the appellant was entitled to have condemned for its road may be designated by metes and bounds, and that they have their damages therefor, as well as for the alleged trespass.

The railway company answered by a general denial, and also set up a grant of right of way fifty yards wide, upon which it alleged its road and other improvements had been constructed.

It also alleged a parol agreement with the appellee J. H. Adams, by which he was charged to have donated to the company about twenty acres of land, embracing the land upon which the buildings and a part of the road was erected, in consideration that the company would there locate a depot. The railway company also prayed for condemnation of the land necessary for the purposes of the company, in the event the former grants alleged to have been made were not found valid.

The jury returned a verdict as follows: " We, the jury, find for defendant as to right of way expressed in the deed, to wit: Seventy-five feet on either side of said railroad track, beginning at a point in the center of said track.  Also damages for plaintiffs in the sum of $1,500 for destruction of orchards, shrubbery, ornamental trees, fences, ditches, highways, and all damages shown to have accrued by reason of the location and construction of said railroad."

The decree carried out the verdict, adjudging the right of way to the defendant, and $1,500 to the plaintiffs, and in addition adjudged to them all of the land as " described in plaintiffs' petition, that is situated more than seventy-five feet from the center of the main track of the defendant's railroad, on each side thereof," and a writ of possession therefor, and that the plaintiffs be quieted in their possession thereof, and that the defendant's claim, except to the right of way, one hundred and fifty feet wide, be annulled.

A deed was offered in evidence made by John H. Adams and wife, in reference to which no question arises upon this appeal, conveying to the railway company the right of way over the land in controversy as found by the jury.

The evidence in relation to damage was general in its character, and mainly related to the injury or damage done to the land by the construction of the railway upon it, though there was evidence tending to show that the railway company had been negligent in regard to fences, through which stock had entered the premises of the appellees and had injured their orchard, crops, etc.  They also showed that the railway company had for its own purposes inclosed more land than was covered by the grant of way.

Both parties having prayers for condemnation of a part of the land sued for, if it should appear that such relief was necessary, the court gave very fully the statutory rules regulating the condemnation of land under the right of eminent domain, and especially such as relate to the measure of damages; but there was no charge which clearly instructed the jury in regard to the measure of damages in case the jury found that the appellees had granted the right of way, as the jury subsequently found that they had, but had not granted all the land appellant had inclosed.

The only charges bearing upon that question were as follows:

" In determining the leading and controlling issues in this case, you will inquire whether, as alleged, the defendants entered upon and took possession of the land described in the plaintiffs' petition, and constructed their road thereon.  You will then determine from the evidence whether they did so with the consent, either

verbal or written, of John H. Adams, or John H. Adams and wife."

"If you find that the entry of the defendants upon the tract of land was with such consent, you will not then consider the question of damages. But if you find that no such consent was given the defendants, you will then proceed to determine the question of damage."

*    *    *    *    *    *    *    *    *    *    *    *

"If you believe from the evidence in this case that the defendants entered upon and took the land described, and constructed their road thereon, and that they took the land with the consent of John H. Adams, verbally or under the terms of a deed granting the right of way through the same, executed by John H. Adams and wife, or in pursuance of any contract or agreement between the defendants and John H. Adams, fulfilled upon the part of defendants, then, in that case, you will find for the defendants."

*    *    *    *    *    *    *    *    *    *    *

"But if you believe that Adams and wife executed the deed giving the right of way through the land which is the subject matter of this suit, to the extent of fifty yards in width, and you believe that this deed was not mutually canceled by the plaintiffs and defendants before the defendants entered thereon, then the defendants would not be liable for any damage upon the strip of fifty yards so conveyed."

"But if you believe that the defendants, though entering under this deed, and you also believe that fences, trees and orchards of the plaintiffs were destroyed by defendants on adjoining tracts, or that the adjoining tract was injured by reason of the letting in of stock, or failure of defendants to keep up proper fences or cattle guards to protect the adjoining fields, then the defendants would be liable for whatever the evidence may show you the damage to be."

The jury were very clearly instructed that if the possession was taken with consent, then no damage could be recovered and the verdict should be for the defendant; and they were clearly instructed that if the appellees had granted a right of way fifty yards wide through the land, they could recover no damage upon the land so conveyed; but it is evident that the jury found that the land outside of the roadway fifty yards wide, which the appellant had inclosed, was not possessed by consent of the appellees, and from their verdict they must have felt authorized on this account, not only to find damages for the trespass upon that land, but also to find damages against the appellant for whatever under the evidence they

deemed proper, for such general damage as was done to the entire tract of land through which the road ran, by reason of the *location and construction of the road*.

The jury enumerate the matters upon which they base the damage, and all of them are items which the court, in the latter part of the charge above referred to, had informed them they might consider in case the entry was lawful, except the two last items, "all damages shown to have accrued by reason of the location and construction of said railroad."

Having found that the railway company was, by deed, entitled to a roadway, as a matter of law no damage could accrue to appellees from the proper location and construction of the road on that roadway, however much such location and construction may have diminished the value of the residue of the land. Parties who, by deed, convey the right of way to a railroad, are conclusively presumed to have assented to bear all loss and take all profit which may incidentally result from the location and construction of the road in proper manner over that roadway.

The court should have instructed the jury in effect, that, if the appellees granted the right of way, no damage could be recovered, either for the use of that right of way, or for the depreciation in value of the other land of appellees, or for any inconvenience to which they might be subjected, provided the same did not result from the want of due care and skill in the location and construction of the road.

There being no such charge, the greater part of the evidence going to the question of the depreciation of the value of the entire tract of land by reason of the location and construction of the road, and the greater part of the charge relating to the condemnation of right of way and measure of damages in such cases, the jury evidently conceived that they might consider the question of damages with reference to land other than the roadway granted, as though no right of way had been granted by deed.

This led to an inconsistent verdict which will require a reversal of the judgment.

There were errors in the admission of testimony which will prob-. ably not occur upon another trial, and they will not be further considered.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 30, 1883.]