Albert F. SCHULTZ, Appellant,

v.

Oda O. HARLESS et al., Appellees.

No. 5044.

Court of Civil Appeals of Texas.

El Paso.

July 21, 1954.

Rehearing Denied Sept. 22, 1954.

Fryer, Milstead & Luscombe, El Paso, for appellant.

R. J. Channell, Ellis O. Mayfield, El Paso, for appellees.

McGILL, Justice.

This was a suit to recover damages for injury to a growing cotton crop during the year 1951, alleged to have been caused by a poison spray used for killing weeds and alleged to have been allowed to drift onto the cotton. Appellees were plaintiffs and appellant defendant in the trial court. Trial was to a jury and on findings favorable to plaintiffs judgment was rendered against defendant for $3,928.

Appellant has presented four points of appeal, three of which urge error in the improper admission of evidence, and one in the improper submission of a special issue inquiring as to defendant's negligence.

Plaintiff's land on which the cotton in question was planted during the year 1951 adjoined defendant's farm, tract No. 3 being the tract on which the damage occurred. Plaintiffs alleged that on or about August 18, 1951, defendant was engaged in the spraying of certain poisons or weed-killers in a ditch which bordered on the southerly line of the Harless farm which plaintiff had under lease, and that the spray of poison was not confined to the ditch of defendant but was allowed to drift over a large portion of the Harless farm and as a result of the application of the poison to the cotton then growing on the Harless farm a large part of such cotton was killed or stunted in its development, resulting in a greatly diminished yield. That defendant was negligent in failing to confine the spray of poison to the property of defendant, and in allowing the poison to drift or blow onto the land of the Harless farm; that the weed killing operations being conducted on defendant's farm were calculated to kill plant life and the defendant or those representing him in such operation knew or should have known that such poison would kill or damage the cotton of plaintiffs if it were allowed to drift or blow onto the lands of plaintiffs, and that the defendant or those representing him knew or in the exercise of reasonable diligence should have known that such poisons were blowing or drifting onto the lands of plaintiffs, and that same would damage the crops on the Harless farm, but negligently failed to confine such poison to defendant's farm and allowed the same to come into contact with the cotton on the Harless farm, and as a result same was damaged by defendant; that the yield from plaintiff's farm was reduced by 20,884 pounds of Pima seed cotton or 6,542 pounds of lint Pima cotton of the reasonable market value of $6,714.54, for which plaintiffs sued. By trial amendments plaintiffs alleged that

had it not been for the negligent acts of defendant they would have raised and harvested from the 42 acre tract 3, thirty 500 pound bales of Pima lint cotton which would have been marketed at a price of 1.0645 per pound, and after deducting the reasonable and necessary cost of cultivating, harvesting and marketing said thirty bales of Pima cotton, and after the sale of the seeds recovered therefrom, plaintiffs would have realized from said thirty bales the sum of $14,730.60, but by reason of the negligent acts of defendant the cotton on the 42 acre tract (Tract 3) died or failed to mature and plaintiffs were able to recover and market only twelve 500 pound bales of Pima lint cotton, which was sold at the reasonable market value of 1.0645 per pound, and after deducting the cost of cultivating, harvesting and marketing said crop and after the sale of the seed recovered therefrom, the net return of twelve bales actually produced from said tract amounted to $5,892.24, and because of the loss of eighteen bales of Pima cotton by reason of defendant's negligence plaintiffs suffered damage in the amount of $8,838.36, which they sought to recover from defendant.

The first point is that the witness James Ryan should not have been permitted to testify as to the 1952 production on any of the tracts, nor should the witness Holdman have been permitted to estimate the 1951 yield on Tract 3, based on 1952 production, because such testimony was too speculative and ethereal.

There is no question but that in a case such as this where a partial injury to a growing crop is involved, the measure of damages is the difference between the value of the crop immediately before and immediately after the injury. International & G. N. Ry. Co. v. Pape, 73 Tex. 501, 11 S.W. 526; Twin City Fire Insurance Co. v. Turnbow, Tex.Civ.App., 135 S.W.2d 641, 13 Tex.Jur. p. 44, Sec. 38. This requires a sound estimate of what the crop would probably have produced if uninjured while cultivated, from which would be deducted the cost of cultivating and marketing. City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.

2d 57; City of Austin v. Howard, Tex.Civ. App., 158 S.W.2d 556, w. r. w. m. At best the result is only an estimate, and from the very nature of the question great liberality in making the proof must be allowed. Texas & St. Louis R. R. Co. v. Young, 60 Tex. 201. There was evidence that the relative productivity of Tract 3 was equal to Tracts 1, 2 and 4. The fact that the year 1952 was a better growing year than 1951, if it were, that the 1952 crop was short staple and the 1951 crop Pima cotton, in view of the evidence that the ratio of yield of Pima to short cotton was about one-half, and the fact that the farm was worked in 1951 by a different farmer than in 1952, would not render Ryan's testimony inadmissible, but would only bear on its weight. All these matters were properly for consideration of the jury in determining what weight, if any, they should give to such testimony, and Holdman's estimate based in part thereon. That Ryan's testimony did throw some light on the probable yield of Tract 3 for 1951 had the crop not been injured we think is certain. It was not so speculative as to have no bearing on the estimate which was the question before the court; therefore it was properly admitted.

■ Point No. 2 is that the witness W. T. Sharp, Sr., should not have been permitted to compare the production on Tract 3 with production on the other tracts, nor to base his loss on 1952 production because such testimony was speculative and ethereal. What we have said in disposing of point 1 is applicable to this point. As above stated, there was evidence that the relative productivity of Tract 3 was equal to tracts 1, 2 and 4 and therefore in estimating the probable yield of Tract 3 in 1951 had there been no injury, the relative yields of Tracts 1, 2 and 4 could properly be considered; also production for the year 1952 could be considered after making proper allowance for the differentiating factors. The jury had before it the three methods by which the probable yield for 1951 on Tract 3 were estimated, i. e., (1) by comparison with the actual yield on Tracts 1, 2 and 4 for the year 1951; and

(2) by calculation from the actual yield of Tract 3 in 1952; and (3) by estimates of experts who saw Tract 3 at about the time of the damage. In considering Sharp's testimony the jury could and no doubt did carefully weigh the evidence by which the estimate for the 1951 yield was arrived at. Their verdict reflects that they did not accord full credence to either of the methods evidenced by Sharp's testimony of which appellant complains. In substance points 1 and 2 present the same question.

■ Point No. 3 is that special issue No. 3 should not have been submitted because there was no evidence that defendant was negligent. Special issue No. 2 inquired if defendant failed to confine the poison to defendant's irrigation ditch bordering on the southerly line of the Harless farm, and special issue No. 3 inquired if such failure was negligence.

Defendant's testimony was sufficient to show that he knew that the poison 2—4D might be and probably would be injurious to the growing cotton. He said he did not know what its effect would be on a growing cotton crop, he "didn't want to take any chances" to find out. He waited until after the growing season to apply it under his cotton to kill nut grass, because it had no effect on mature cotton. Certainly a fair deduction is that he knew or had reason to believe the poison would be injurious to the growing cotton. Since it was used to kill weeds and other kinds of vegetation it is incredile to suppose that defendant could have had no fear that it would also kill growing cotton.

■ The fourth point is that the witness W. T. Sharp, Sr., should not have been permitted to testify in rebuttal as to picking costs in 1951, or as to the gain per bale, based on the thirty-bale figure, because such testimony was not in rebuttal.

On cross-examination this witness was requested to produce the gin tickets for the years 1950 and 1951. If we may assume that these tickets showed or tended to show the amount of cotton actually produced from Tract 3, under the Pape case supra,

the cost of picking and marketing such cotton would have to be deducted from the total market price therefor to arrive at the value of the crop actually produced. The testimony showing this was essential to plaintiffs' case. The court did not abuse his discretion in permitting it to be introduced on rebuttal. 17 Tex.Jur. p. 373, Sec. 128.

All of appellant's points are overruled, and the judgment is affirmed.