**AERIAL SPRAYERS, Inc., Appellant,**

v.

**YERGER, HILL & SON et al., Appellees.**

**No. 10510.**

Court of Civil Appeals of Texas.

Austin.

Oct. 16, 1957.

Rehearing Denied Nov. 6, 1957.

Hart, Brown, Sparks & Erwin, Austin, for appellant.

C. C. Jopling, John C. Marburger, La Grange, for appellees.

HUGHES, Justice.

This is a venue case.

Yerger, Hill & Son, a partnership, the owner of farm lands in Bastrop County, and its crop sharing tenants, E. P. Foytik, Lloyd L. Burns, John Burns and Joe Kadalich, all residents of Bastrop County, sued, in the District Court of Fayette County, Aerial Sprayers, Inc., a corporation, and W. A. Rosanky to recover for damage to their growing cotton crop alleged to have been caused by and resulted from the act of Aerial Sprayers in spraying by aircraft the Rosanky farm with a hormone herbicide known as 2,4–D, on April 14, 1955.

W. A. Rosanky is a resident of Bastrop County. Aerial Sprayers, Inc., has its principal office in Jones County.

Rosanky filed a cross action against Aerial Sprayers praying, in the event of judgment against him, that he have judgment over against it by way of indemnity or contribution.

Aerial Sprayers filed pleas of privilege to both the main suit and the Rosanky cross action and both were overruled.

■ Appellant has twenty-three points, grouping for briefing points 1, 3, 5, 7, 9, 11, 13, 15, 20, 21, 22 and 23 relating to the failure of appellees to prove at all or by a preponderance of the evidence that any act or omission by it caused the damage to the cotton crop on the Yerger lands.

The evidence shows that growing cotton on the Yerger farms was damaged by a hormone type herbicide within the period for damage to normally appear following the spraying of the Rosanky farm.

The following facts are also reflected by the evidence.

Mr. J. E. Hooper, Jr., Aerial's president, made an agreement with Mr. Rosanky to spray his farm, located partly in Bastrop and Fayette Counties with 2,4–D and he testified as follows:

"Q. Prior to the time that you did the spraying, did you make any investigation in the territory four or five miles to determine whether or not there was any cotton growing and up? A. Mr. Rosanky told me there was no cotton

near. We drove through there and we didn't see any of it.

"Q. You do know that this herbicide is likely to drift as much as eight or ten miles—do you know that? A. Under some conditions, yes.

"Q. Did you make an effort to find out whether or not there was any cotton within eight or ten miles where you were spraying already up? A. Yes, sir, we discussed that at length.

"Q. And you knew and had knowledge, Mr. Hooper, that if this herbicide got on to cotton which had up, it was up an inch and a half, or two or three inches, why it would damage it, did you not? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. You do know, Mr. Hooper, in your experience that this herbicide has been known to escape from and drift away from the place where you have been doing the spraying? A. To a certain distance, yes.

"Q. And you know that that element of danger is there whenever you do your spraying? A. Yes, sir."

The Yerger lands, some of them, are located near Smithville, Bastrop County, about five miles north and a little east of the Rosanky farm.

The wind direction when the Rosanky farm was sprayed was south southwest which would place the Yerger farms directly in the wind path.

The Commissioner of Agriculture of Texas, under statutory authority,[1] has promulgated regulations governing the sale and use of hormone type herbicides. These regulations require a permit if more than 10 acres is to be sprayed in one year.

The evidence shows that the application to spray the Rosanky farm was the only one procured in the vicinity of the farm during the period of contamination for the Yerger lands.

Mr. C. T. Wallace, an employee of the State Department of Agriculture, testified:

"Q. Now concerning the source of the hormone-type of herbicide that did the damage you saw and observed, it is pure speculation as to where the herbicide came from, isn't it? A. I will state it this way. We made what we thought was quite a thorough investigation and we could find no evidence of other spraying.

"Q. Where did you go to make that investigation that you regarded as thorough? A. In and around Smithville.

"Q. Did you go outside of Bastrop County? A. Yes, sir, we went in Fayette County.

"Q. You made your investigation in Bastrop and Fayette Counties? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. In response to this question asked you by Mr. Jopling, you stated that no other spraying was done in a certain territory in April of 1955; what territory did you have in mind? A. The Smithville area.

"Q. And what is included in the Smithville area? A. We checked the record for Bastrop and Fayette County both.

"Q. What you really mean to say and all you can testify to is that the records of the Department of Agriculture do not show any permit to anybody else for a spray operation in either Bastrop or Fayette Counties during the month of April 1955. A. That is correct.

"Q. You have no way in the world of knowing whether someone might

---

1. Art. 135b–4, Vernon's Ann.Civ.St.

have used a fogging machine on the ground or whether someone might have used an aerial spray device without getting permission from the Department of Agriculture. A. That is correct.

\* \* \* \* \* \*

"Q. \* \* \* I believe you testified that you all made a determined investigation as you possibly could to determine whether or not there was any herbicide spraying any other place in that territory other than at Mr. Rosanky's? A. Yes, sir.

"Q. And from your investigation you now say that the results of your findings was that such was the only spraying that had been done? A. Yes, sir.

\* \* \* \* \* \*

"A. \* \* \* We found no evidence of other spraying in that vicinity that could have caused this damage.

"Q. Other than Mr. Rosanky's spraying? A. Yes, sir."

It is our opinion that the above evidence is some evidence of causation. It is substantial evidence of a circumstantial nature that the herbicide loosed by Aerial drifted onto the Yerger lands and damaged the cotton growing thereon. It is within the realm of possibility, of course, that the deadly potion came from other sources. These possibilities, however, do not, as a matter of law, destroy the cogency of the facts related above nor the ultimate conclusion to which they lead.

To the extent that the points under consideration question the existence of any evidence of causation they are overruled and we will proceed to dispose of the contention that the finding of causation is so against the preponderance of the evidence as to be manifestly wrong.

The only witness for appellant was Mr. Hooper, its president. He was present when the Rosanky lands were sprayed by Aerial. His testimony was that an inspector for the Department of Agriculture was present to observe the spraying; that he and the inspector did observe the spraying and that it was done strictly in accordance with the prescribed rules and regulations.

We need not detail the testimony of Mr. Hooper. It is completely exculpatory and if accepted by a fact finder would show causation between the spraying and the crop damage to be an impossibility.

Without in any sense detracting from the credibility of Mr. Hooper we cannot say that his testimony or the testimony of any interested witness of the nature presented is sufficient to justify us in holding that the finding of causation is so against the preponderance of the evidence as to be clearly wrong.

Appellant's points, 2, 4, 6, 8, 10, 12, 14, 16, 20, 21, 22 and 23 relate to the failure of appellees to prove any negligence on the part of appellant or to their failure to prove such negligence by a preponderance of the evidence.

Appellees, except Rosanky, pleaded many grounds of negligence including the allegation that appellant and Rosanky were negligent in failing to confine the herbicide to the Rosanky farm. This pleaded a specific act of negligence. Haynes B. Ownby Drilling Co. v. McClure, Tex.Civ.App. Austin, 264 S.W.2d 204, writ ref., N.R.E. See, also, Vrazel v. Bieri, Tex.Civ.App. Galveston, 294 S.W.2d 148, writ ref., N.R.E.

We have discussed the evidence above and in our opinion it is sufficient to sustain a fact finding of negligence in failing to confine the herbicide to the Rosanky farm and such finding is not so against the preponderance of the evidence as to be clearly wrong. See Schultz v. Harless, Tex.Civ. App. El Paso, 271 S.W.2d 696.

■ It is our opinion that, under the evidence, venue of this cause was properly laid, as to appellant, in Fayette County under subd. 23 of Art. 1995, V.A.C.S., providing

that suits against a private corporation may be brought in the county in which the cause of action or a part thereof arose.

Some of the spraying was done in Fayette County. This was part of the cause of action.

Appellant does not contend that venue of the Rosanky cross action should be different from venue of the main suit.

Appellant's other points relate to venue exceptions not necessary to discuss.

We affirm the judgment of the Trial Court.

Affirmed.