**PAN–AM FOODS, INC., Appellant,**

v.

**Salvador E. PEREZ, Appellee.**

**No. 20.**

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 31, 1964.

Rehearing Denied Jan. 27, 1965.

Bascom Cox, of Cox & Wilson, Brownsville, for appellant.

Hector Yznaga, of Cunningham, Yznaga & Duncan, Brownsville, for appellee.

NYE, Justice.

This is a breach of contract suit. Salvador E. Perez brought suit against Pan-Am Foods, Inc., for damages on account of an alleged breach of contract for the purchase and sale of okra. Perez entered into a contract with Pan-Am whereby Pan-Am agreed to pay Perez six cents per pound for all okra raised on his land and delivered to Pan-Am's plant in Brownsville between June 1, 1962, and August 1, 1962, which met certain specifications. The contract provided for deductions for off-grade okra and provided that Pan-Am could reject any load with a high percentage of off-grade okra. Perez contended in the trial court that Pan-Am had breached the contract by refusing to purchase any more okra from Perez after June 27, 1962, whereas, Perez had an abundance of okra from the land in question meeting the contract specifications. Pan-Am contended that it only refused to accept okra from Perez that contained a high percentage of off-grade okra. The case was tried before a jury and based upon the verdict of the jury the trial court rendered judgment in favor of Perez for the sum of $4,128.00. Pan-Am perfected its appeal to this Court.

Pan-Am assigns twenty-seven points of error, many of which complain of the three special issues submitted. We, therefore, deem it advisable to quote the issues submitted to the jury, which are as follows:

"SPECIAL ISSUE NO. 1"

"Do you find from a preponderance of the evidence that Pan-Am Foods, Inc., refused to accept delivery of any okra after Junt 27, 1962, which was being produced on the land in question?

"Answer 'yes' or 'no'

"We, the Jury, answer: Yes

"If you have answered Special Issue No. 1 'yes' and only in that event, answer Special Issue No. 2."

"SPECIAL ISSUE NO. 2"

"How many pounds, if any, of okra produced on the land in question do you find from a preponderance of the evidence would have met contract specifications if delivered to Pan-Am Foods, Inc., during the period from June 28, 1962, to August 1, 1962, if Pan-Am Foods, Inc., had not refused to accept delivery, if you have found it did so refuse?

"Answer by number of pounds, if any, or 'none'.

"We, the Jury, answer: 170,000

"If you have answered Special Issue No. 1 'yes', and only in that event, answer Special Issue No. 3."

## "SPECIAL ISSUE NO. 3"

"What expense, expressed in dollars and cents, do you find from a preponderance of the evidence would have been incurred by Salvador E. Perez in producing and delivering okra from the land in question between June 27, 1962, and August 1, 1962, if Pan-Am Foods, Inc., had continued to accept okra until August 1, 1962, if they did not so accept his okra?

"Answer in dollars and cents.

"We, the Jury answer: $6,072.00"

"In connection with your answer to the above question, you will consider the cost, if any, of picking and preparing for market, the cost, if any, of delivery, and the cost, if any, for watering, spraying and fertilizer of the okra being produced on the land in question."

Pan-Am's first three points complain that the trial court erred in submitting special issue number 1 because the issue was prejudicial to Pan-Am; it amounted to a comment on the weight of the evidence; and it did not limit the jury's consideration to okra meeting contract specifications. Pan-Am argues that it was undisputed that after June 27, 1962, Pan-Am had refused to accept any load with high percentage of off-grade okra which they had the right to do under the contract. It was also undisputed that on July 7, 1962, the okra operations at the plant were completely suspended. Appellant contends that the only inquiry material to the case was whether or not Pan-Am refused to accept any of appellee's okra which met contract specifications after June 27, 1962. Appellant argues that the submission of special issue number 1 infers that Pan-Am did not have the right to refuse to accept any of appellee's okra.

The inquiry in special issue number 1 as to whether or not appellant refused to accept delivery of any okra after the date of the alleged breach of the contract, if answered in the negative, would have acquitted the defendant-appellant from any liability, because special issues 2 and 3 were conditionally submitted. The trial court, in its charge, defined the type of okra that would meet the specifications under the contract which Pan-Am would be required to accept from appellee. Even though issue number 1, by the use of the word "any" would not necessarily limit consideration to only okra that did meet contract specifications, the following special issue number 2, conditionally submitted, required the jury in its answer to there consider only such okra that met the specifications of the contract. This issue number 2 required the jury to find only the number of pounds of okra, "if any", that would have "met contract specifications" if delivered to appellant, which appellant refused to accept "if you found it did so refuse" after the date of the alleged breach of contract. Special issue number 2, being one of the ultimate issues, determines the necessary facts that give rise to the bases for the judgment. The trial court avoided assuming any controverted fact by a proper submission of special issue number 2, by using the language "if any" and "if you found it did so refuse," thereby eliminating any comment on the weight of the evidence. We find no reversible error.

There was ample evidence presented that would entitle the appellee to a submission of an issue inquiring whether or not appellant refused to accept the appellee's okra. It was appellee's theory of the case that Pan-Am arbitrarily refused to accept any more okra from appellee after June 27, 1962. Appellee's son testified that when he arrived at the appellant's plant on June 27, 1962, appellant's employee told the witness not to bring any more okra without even looking at the load. Appellee testified that he also talked with Pan-Am's employee and was advised not to bring any more okra. Mr. Perez (appellee) asked Mr. Salter (Pan-Am's employee): "I understand you don't want my okra any more?", to which

Mr. Salter answered: "That is right. We don't want it any more. We can't use it any more. We just can't use it."

■ Although special issue number 1 might have been framed differently, we do not believe that the jury was misled or that the issue was prejudicial to the appellant. In determining whether a special issue constitutes prejudicial error, consideration must be given to the charge as a whole to determine the probable effect of the special issue on the minds of the jury. We believe that viewing issues number 1 and number 2 together, along with the definitions and instructions of the court, it is unlikely that the jury was misled by the submission of special issue number 1. Texas Employers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147 (1948); 4 Tex. Jur.2d 618, § 954 and page 557, § 936. Appellant's points 1, 2 and 3 are overruled.

■ Appellant's fourth point complains of the trial court's instruction to special issue number 3 inasmuch as the enumerated items of expense did not include all the items of possible, or even probable expense. The court instructed the jury concerning special issue number 3 as to the expense that appellee would incur in producing and delivering the okra during the period of time in question as follows:

"In connection with your answer to the above question, you will consider the costs, if any, of picking and preparing for market, the cost, if any, of delivery and the cost, if any, for water, fertilizer and spraying of the okra being produced on the land in question."

Appellant contends that the instruction does not direct the jury's attention to the matter of rent on the land; nor would the jury be apt to consider the cost of securing and housing the braceros, nor is the jury told by the court that they can take into consideration the matter of depreciation of appellee's several trucks and equipment. Appellant's objection to the court's instruction was vague and general, stating only that the instruction does not include all items of possible or even probable expense. Appellant's objection is not well taken as it was too general to be considered. Rule 274 Texas Rules of Civil Procedure, 3 Tex.Jur.2d 410 § 138; Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474 (1934); Whitson Company v. Bluff Creek Oil Company, 156 Tex. 139, 293 S.W.2d 488 (1956); City of Houston v. Priester, 302 S.W.2d 948, (Tex.Civ.App.1957).

■ The contract price set the value of the acceptable growing crop at six cents per pound. Appellee testified that the pickers were getting two cents per pound for the okra. Other testimony included the cost per day of the foreman, two graders, the payment to his two sons, the cost per day for gasoline and truck expense, insurance and contracting fees for fifteen braceros. There was testimony that the crop had matured. There was no evidence that the crops needed any additional water, fertilizer, spraying or cultivation after June 27, 1962. The testimony was that this had been done prior to this date and the expenses had heretofore been paid. The appellant did not bring out cost of rent or the arrangements that the appellee had with his lessor, or any evidence as to how this would affect the damages. Without such evidence as to how the possible rent expense would affect the damages owed to the appellee by the appellant, we find no error in the instruction given by the trial court. International & G. N. R. Co. v. Pape, 73 Tex. 501, 11 S.W. 526 (1889); Schultz v. Harless, 271 S.W.2d 696, (Tex.Civ.App. 1954).

■ Appellant's point number 11 is restated and argued along with the remaining points in appellant's brief. Appellant contends that the trial court erred in instructing the jury to continue its deliberations after the receipt by the court of the following message by the jury, to-wit:

"On the basis of the evidence during the trial, we are unable to answer spe-

cial issue no. 3 due to the fact that we do not know the cost of labor, watering, fertilizing, etc., or whether the plaintiff would have performed these services."

The trial court rightly declined to give the jury further instructions in such connection and advised the jury to continue its deliberations. Appellant argues that the question submitted to the court by the jury supports the position that the answer of the jury to special issue number 3 was based on surmise and speculation because there is no evidence to support the answer to such issue. We have heretofore discussed the sufficiency of the evidence to support the finding on such issue under appellant's point number 4. We find no error in the incident complained of and, therefore, appellant's point number 11 is overruled.

Appellant filed motions for instructed verdict and a motion and supplemental motion for judgment non obstante veredicto. Appellant, in point number 22, contends that the trial court erred in granting appellee's motion for judgment. All of appellant's remaining points are points of no evidence or insufficient evidence and being contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. These points require a careful examination of all of the evidence in the record. The assignment of no evidence points requires the Court of Civil Appeals to be governed by the well established rule that if an issue of fact is raised by the evidence it must go to the jury even though the verdict that is based on such evidence would have to be set aside as not supported by sufficient evidence. An issue of fact is raised, if disregarding all adverse evidence and giving credit to all of the evidence favorable to the appellee and in indulging every legitimate conclusion that is favorable to him which might have been drawn from the facts proved, a jury might have found such fact in favor of the appellee. 38 Texas Law Review 361; Great Atlantic & Pacific Tea Company v. Giles,

354 S.W.2d 410, (Tex.Civ.App.1962, ref., n. r. e.) ; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. On those points challenging the insufficiency of the evidence we are governed by the rule set out in 38 Texas Law Review at pages 367 and 368:

"If there is evidence or probative force tending to prove the existence of a vital fact and evidence tending to disprove its existence, and the point of error is that the finding is against the great weight and preponderance of the evidence, the rule by which a Court of Civil Appeals should be guided in passing on the point is simple even if the conclusion to be reached in a particular case is difficult. If the finding of the existence of the fact, considering all of the evidence, is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, the court should sustain the point and order a new trial; otherwise, the court should overrule the point and affirm."

For the most part, appellant's no evidence points complain of the appellee's failure to negate all conceivable factors that would lessen appellant's damage. For instance, appellant complains that there was no evidence as to the weather conditions during the thirty-four days from June 28th to August 1, 1962, or proof that such weather conditions would have been conclusive to growing okra; no evidence that the period was one of rain or extreme drought; no evidence that there were no hurricanes, tornadoes, floods or disastrous weather conditions; no evidence as to what the okra growing conditions were during said period; no evidence that it would be necessary to cultivate the crops during this period or that appellee was financially able to arrange for such cultivation; no evidence as to whether or not it would be necessary to irrigate or that appellee was financially able to arrange for such irrigation. The same complaint is made as to fertilizer, insecticides, spraying, the presence or absence of insects, and his ability to finance or harvest

the crop; no evidence that all of his employees were in good health and able to carry out their duties or that an epidemic would have stricken a number of the workers or that they would have been injured in a truck accident or been drafted into the Army, killed or injured in brawls or otherwise unavailable to work, and many other such complaints.

■ The jury determined the number of pounds of okra that the appellant refused to accept that met contract specifications. The contract provided for a price of six cents per pound. The jury determined the amount of expense which would be deducted from the gross sales price to determine the amount of damages due the appellee after proper instructions by the court. There was no necessity for the appellee to eliminate from consideration every other conceivable expense not raised by the appellant by proper pleadings and evidence.

■ The evidence does show that appellee planted one hundred fifty acres of okra between the 1st and 10th of February, 1962, using Clemson's Spineless certified seed; he testified that the crop had been irrigated, cultivated, fertilized and sprayed until the crop matured. He described the okra fields as they appeared on June 27, 1962, as being green; that the plants were about three feet high and just reaching their peak and that it was the best stand that he had had in years. Appellee testified that he was one of the first farmers that delivered Clemson's Spineless okra to the appellant and that he had planted, picked and shipped okra for a period of fifteen years. He testified that his rows were clean and that 1962 was the best crop year that he had ever had with reference to yield and quality. He testified further that after checking his records for prior years and conferring with other farmers, that his farm would yield 8,000 pounds per acre for the 1962 season. Appellant's witness testified that an average between three and four thousand pounds per acre of usable okra could be harvested. This was after

deducting 35% culls from the gross yield. The same witness testified further that a good bracero can pick up to 400 pounds of okra per day and that it is easier to pick okra when the plants are two-and-a-half to three feet high because the picker can see it better and does not have to stoop to get it. Appellee testified that okra can be picked until the 1st of September and okra plants keep putting on okra all season long; that Pan-Am had bought okra during the 1961 season until August 12th. Appellee testified that the contractual specifications called for Clemson's Spineless okra; that the pods had to be from 2½″ x 3½″ with caps off, and that it was to be tender and free from defects or insects and that the okra be typically green color. He testified that 85% of his okra would meet these specifications. That his total 1962 yield would be 1,200,000 pounds and that up to June 27th he had picked 337,400 pounds, leaving 862,600 pounds available for market. Other witnesses testified that the total yield would be around 600,000 pounds, which would bring it well within the answer that the jury found to special issue number 2, i. e. 170,000 pounds of okra meeting contract specifications. There is ample evidence that appellant refused to accept the appellee's okra that would have met contract specifications after June 27, 1962. There is little doubt that the appellee qualified himself as an expert on okra and as such, he can give his opinion as to the probable yield, the value of the crop and such other relevant matters, where he has qualified himself accordingly. Southwestern Portland Cement Co. v. Kezer, 174 S.W. 661 (Tex.Civ. App.1915, wr. ref.); Schultz v. Harless, supra.

■■ Appellee testified as to the cost of picking and preparing for the market, the cost of delivery, and other expenses incidental to the production of the okra. Although there was some conflict in the testimony we hold that there was sufficient evidence to sustain the jury's answers to the special issues involved and that such evidence and the inference that can be prop-

erly drawn therefrom, tends to support the verdict. It was the jury's province to weigh all the evidence and to decide what credence should be given to the testimony of the various witnesses. We hold that there is evidence of probative value to sustain the findings of the jury and such findings are not contrary to the great weight and preponderance of the evidence. For the reasons given the trial court granted appellee's motion for judgment and properly overruled appellant's motions for instructed verdict and for judgment non obstante veredicto. Appellant's points are overruled.

Judgment of the trial court is affirmed.