**SUN PIPE LINE CO., INC., et al.,**
**Appellants,**

**v.**

**George P. KIRKPATRICK, Appellee.**

**No. 7590.**

Court of Civil Appeals of Texas,
Beaumont.

Sept. 19, 1974.

Rehearing Denied Oct. 31, 1974.

Daniel V. Flatten, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellants.

H. A. Coe, Jr., Kountze, for appellee.

KEITH, Justice.

Defendants appeal from an adverse judgment wherein plaintiff recovered for damage done to his growing timber and to his fences. Plaintiff owned a large tract of land in Montgomery County with Sun Pipe Line Company having an easement approximately thirty feet in width across the northern boundary thereof.[1] Limbs growing upon trees on plaintiff's lands obscured the surface of the easement and prevented the use of airplanes to patrol and inspect the pipe line for leaks. Sun engaged the defendant, Mobley Co., Inc., to spray these overhanging limbs with a chemical spray. Mobley sprayed the right-of-way and plaintiff testified that a large number of his trees were killed; others, weakened by the spray, became infested with beetles and died; that the trees which were killed fell across his fences causing further damage.

The record does not disclose precisely the chemical composition of the spray used in the trimming operation.[2] This spray was shot out of a device on a truck toward the

---

1. We do not have a copy of the right-of-way easement granted to Sun by plaintiff's predecessors in title; but, there seems to be no contention made by plaintiff but that Sun had at least implied authority to trim the overhanging limbs from trees growing on his adjacent property and to use the surface of the easement.

2. It was variously described as "Ammite or Ammonia Sulphate," "an organic herbicide"; or as "a DuPont product called Ammate 'X.Y.'" This chemical was mixed with water and oil so that it had a "consistency of mayonnaise," according to the applicator; or of diesel oil, according to the plaintiff.

limb which was to be removed and a blower attachment controlled by the operator was designed to cause the spray to come in contact with the limb to be removed.

The Court submitted the cause upon the negligence theory in accordance with plaintiff's pleadings and we summarize the findings in the margin.[3] The jury also found (in answer to Special Issue No. 17) that Mobley was acting as an independent contractor in spraying the right-of-way. The award of damages is not challenged.

Plaintiff had a very general allegation of trespass in his pleadings but no issues on trespass were submitted to the jury nor did plaintiff request any issues which would have submitted the trespass theory to the jury. For the first time, in his motion to disregard the nonfindings of negligence, plaintiff contended that Sun could not escape liability upon the finding that Mobley was an independent contractor "because the application of the chemical had such a potential for danger as to be classified as inherently dangerous and Sun Pipe Line Co., Inc., is liable for damages resulting from such work, even if performed by an Independent Contractor." He sought to have the Court disregard the nonfindings of negligence and to enter judgment for plaintiff on the remaining findings.

Plaintiff's motion was granted and the Court disregarded the jury's answers to Issues Nos. 2, 6, 8, 11, and 17, making these findings in the judgment:

"The spraying of herbicides into the air is inherently dangerous, and that the Sun Pipe Line Company owned [sic] Plaintiff a non delegable duty not to allow the herbicide to drift onto Plaintiff's land

that it could not delegate to others because of the inherently dangerous nature of the operation, and that both Defendants are jointly and severally liable to Plaintiff herein for damages caused by the said spraying operations; The Court further finds that the answer to special issue number 17, should be and is hereby disregarded by the court; the Court finds that the spraying operations were conducted from a pipe line right of way on Plaintiff's land with a herbicide spray that was intentionally sprayed up into the air at times when a wind or breeze was blowing and that same drifted off the pipe line right of way onto Plaintiff's land on which Defendants had no easement or right to spray, and that such constituted a trespass because the act of spraying the herbicide into the air was intentional and such act resulted in the trespass consisting of the spreading or drifting of herbicide onto Plaintiff's land; The Court is of the opinion that the jury's answers to special issues numbers 2, 6, 8, and 11 should be and same are hereby disregarded and that no negligence need be proven as same is not necessary to support a recovery herein based on the trespass resulting from the spraying operations."

## OPINION

It is readily apparent from the foregoing summary of the proceedings that we are confronted by two basic questions: (a) one of substantive law, i.e., Was a finding of negligence a sine qua non to plaintiff's recovery? and (b) the procedural question, Was the trial court authorized to enter the judgment in the absence of jury

---

3. The jury found: (1) The chemical spray drifted or floated in the air onto plaintiff's land; (2) *failed* to find this to be negligent; (3) proximate cause, conditionally submitted, not answered; (4) the spraying caused the trees to become weak and damaged; (5) and to become infested with beetles; (6) *failed* to find that the spraying operation caused the trees to die; (7) the spraying was done while the wind or a breeze was blowing;

(8) *failed* to find that this was negligence; (9) proximate cause, conditionally submitted, not answered; (10) the spraying operation was conducted in the spring or summer; (11) *failed* to find this was negligence; (12) proximate cause, conditionally submitted, not answered; (16) spraying operations caused damage to plaintiff's trees; (17A) spraying operations caused damage to plaintiff's timber; (17B) and to his fence.

findings or a request therefor? We will discuss the questions in the order stated.

■ In Baer v. Dallas Theater Center, 330 S.W.2d 214, 219 (Tex.Civ.App., Waco, 1959, error ref. n.r.e.), the court said: "The general rule is that the owner of the easement may prepare, maintain and improve it 'to an extent reasonably calculated to promote the purposes for which it was created.'" The removal of the overhanging limbs was necessary in order that Sun could reasonably use the easement for its purposes. Indeed, plaintiff concedes that Sun had the right to remove the offending limbs from his trees by manual means, i.e., severance by a saw or an ax. This concession is one imposed by law upon the owner of the servient estate because every easement carries with it the right to do whatever is reasonably necessary for the full enjoyment of the easement itself. Knox v. Pioneer Natural Gas Company, 321 S.W.2d 596, 601 (Tex.Civ. App., El Paso, 1959, error ref. n.r.e.); Phillips Petroleum Company v. Terrel, 404 S.W.2d 927, 929 (Tex.Civ.App., Amarillo, 1966, no writ).

Sun was required to exercise its rights of use of the easement with due care and without negligence. For, as stated in Lone Star Gas Co. v. Hutton, 58 S.W.2d 19, 21 (Tex.Com.App., 1933, holdings approved), the Court said: "If grantee [Gas Company] exercise the rights conferred in the conveyance with due care and without negligence, then no damages were recoverable." Further, the Court said: "The burden rested upon Hutton and wife to allege and prove that the gas company was guilty of negligence in this respect." As applied to the facts of this case, the language of Texas Power & Light Co. v. Casey, 138 S. W.2d 594, 597–598 (Tex.Civ.App., Fort Worth, 1940, error dism. jdgmt. cor.), is highly persuasive:

"It is well settled by the decisions of our Supreme Court that where one has an easement right over land such as the one possessed by defendant in this case, in order for the owner of title to the land to recover damages growing out of the use of such easement, he must show that the defendant was guilty of negligence in the manner in which it was used. Lone Star Gas Co. v. Hutton, Tex.Comp.App., 58 S.W.2d 19, and decisions there cited; Houston & E. Tex. Ry. Co. v. Adams, 58 Tex. 476; Gulf Pipe Line Co. v. Watson, Tex.Civ.App., 8 S.W.2d 957."

The trespass theory of plaintiff, resting as it does upon the Court's findings and not those of a jury, presupposes an unreasonable use of Sun's possessory rights in the easement. But, the doctrine of Rylands v. Fletcher [4] has long since been repudiated in Texas. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221 (1936). Chief Justice Cureton enunciated the rule applicable to this case saying:

"The plaintiffs in error in their application say that the Court of Civil Appeals in its opinion has held that in order for plaintiffs in error [the land owners] to recover because the defendants in error permitted salt water to overflow their land, kill the vegetation, and pollute the water of their live stock, *they must allege and prove some specific act of neglect or must allege and prove that the water polluted was a water course.* In this conclusion we think the Court of Civil Appeals stated the correct rule." (96 S.W.2d 221–222, emphasis in text)

■ From the foregoing authorities it is abundantly clear that plaintiff labored under the burden of securing a finding of negligence on the part of Sun in the removal of the overhanging limbs from the easement unless excused by his theory found by the Court—a trespass through the use of an inherently dangerous chemical. Even here, as to Sun, plaintiff must fail because the jury found that Mobley was an independent contractor and no challenge is

4. L.R. 1 Ex. 265 (1866), aff'd, L.R. 3 H.L. 330 (1868).

made of the evidence supporting that finding.

In Pitchfork Land and Cattle Company v. King, 162 Tex. 331, 346 S.W.2d 598 (1961), a group of cotton-farmer plaintiffs joined as defendants the aerial sprayer company and his employer, the ranch owner, in a suit for damages to their cotton crops allegedly caused by the drifting of herbicide. The Supreme Court held that since the aerial sprayer was an independent contractor, the landowner who hired the sprayer was not liable for the sprayer's negligence.[5]

When we return to the crop dusting cases, plaintiff again is confronted with a well established body of law requiring a showing of negligence in order to recover. Vrazel v. Bieri, 294 S.W.2d 148, 152 (Tex.Civ.App., Galveston, 1956, error ref. n.r.e.), is typical. Plaintiff there sued the rice-farming landowner and the crop duster jointly because a herbicide sprayed on the rice fields drifted onto his cotton crop causing damage. The jury found the damage was caused by the spraying operation but acquitted the defendants of negligence; and, further, it found that the duster was an independent contractor. The Court noted the repudiation of the doctrine of Rylands v. Fletcher, supra, and continued:

"Under our law it is clearly required, in a case such as the present, before an injured suitor may recover, that he obtain fact findings of actionable negligence. In the absence of these, he is not entitled to judgment. A finding of inju-

ry is not enough. Here not only did appellant fail to obtain such findings but the findings returned by the jury negative negligence. Legally speaking, the verdict returned by the jury established that plaintiff was not entitled to judgment but that defendants were."

In Gamblin v. Ingram, 378 S.W.2d 941 (Tex.Civ.App., Waco, 1964, no writ), plaintiff's cotton crop was damaged when herbicide sprayed on the maize crop of his neighbor drifted onto the cotton. The jury found that the pilot "did allow the herbicide to blow onto the plaintiff's cotton, but such action was not negligence." (at 941) Citing Turner v. Big Lake Oil Co., supra, and Vrazel v. Bieri, supra, the Court reiterated the rule that "the plaintiff had the burden of showing that defendants were guilty of negligent conduct proximately causing his loss before he is entitled to recover." (at 942)

The Supreme Court held in Dallas County Flood Control District v. Benson, 157 Tex. 617, 306 S.W.2d 350, 352 (1957), that the act of spraying chemicals on weeds upon its right-of-way which drifted onto plaintiffs' crops was "the result of negligence or accident" and the district could not be held liable because of the doctrine of governmental immunity.

In each of the Texas crop dusting cases, where there has been no physical invasion of the plaintiff's premises by the crop duster, the courts have uniformly required a finding of negligence as a condition precedent to imposition of liability. In addition to those discussed heretofore, others are cited in the margin.[6] The case of

---

5. See Comment, 40 Tex.L.Rev. 527, 536 (1962), discussing Pitchfork and certain out of state cases which have reached a contrary result. See also, "Liability for Injury Caused by Spraying or Dusting of Crops," 37 A.L.R. 3d 833, 845 (1971).

6. Leonard v. Abbott, 366 S.W.2d 925 (Tex. 1963), a venue case wherein the nonresident employer of an aerial sprayer was found not within the provisions of Art. 1995, § 9a, Vernon's Ann.Civ.St., when the record showed

the spraying occurred in one county and the damage in the county of suit; Schultz v. Harless, 271 S.W.2d 696 (Tex.Civ.App., El Paso, 1954, no writ), where a recovery was allowed based upon a finding of negligence; Aerial Sprayers v. Yerger, Hill & Son, 306 S.W.2d 433 (Tex.Civ.App., Austin, 1957, no writ), a venue appeal wherein the evidence supported the trial court's implied finding of negligence; Boyd v. Thompson-Hayward Chemical Company, 450 S.W.2d 937 (Tex.Civ.App., Tyler, 1970, error dism.),

Schronk v. Gilliam, 380 S.W.2d 743 (Tex. Civ.App., Waco, 1964, no writ), is readily distinguishable from the case at bar. The pilot of the crop dusting plane made an unprivileged intrusion on the plaintiff's land in such manner as to be dangerous thereto. Primary reliance was placed upon several sections of the Restatement of Torts governing the operation of airplanes over lands, none of which have any relevancy here since no airplane was involved.[7]

■ The trial court's rejection of the requirement of negligence in this case and the adoption of the trespass theory is based on his finding that the spraying operation was *inherently dangerous*. We readily accept the proposition that the employer of an independent contractor may not escape liability for the acts of the contractor which are "intrinsically dangerous," e.g., the excavation of a hole in a city street. Cameron Mill & Elevator Co. v. Anderson, 98 Tex. 156, 81 S.W. 282 (1904); Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089 (1908); Cage v. Creed, 308 S.W.2d 78, 80 (Tex.Civ.App., Waco, 1957, no writ). See also, Loyd v. Herrington, 143 Tex. 135, 182 S.W.2d 1003, 1004, (1944).

On the other hand, some activities which would seemingly fit the test have been held not to be inherently dangerous. Thus, the use of an open flame from an acetylene torch has been held not to be an inherently dangerous operation. Brownsville Navigation Dist. v. Valley Ice & Fuel Co., 313 S.W.2d 104, 106 (Tex.Civ.App., San Antonio, 1958, no writ). The use of an inflammable paint remover "is not work that is inherently dangerous." Olson v. B. W. Merchandise, Inc., 388 S.W.2d 737, 740 (Tex. Civ.App., Austin, 1965, no writ).

■ As applied to crop dusting, the phrase "inherently dangerous" was used in Leonard v. Abbott, 357 S.W.2d 778, 782 [Tex.Civ.App., Texarkana, 1962, reversed, 366 S.W.2d 925 (Tex.1963)]. The intermediate court relied upon the Herbicide Control Act, Art. 135b—4, V.A.C.S., and II Restatement of Torts, 1148, Sec. 427, Comment "a", the quotation being set out in the margin.[8] We do not regard this case as controlling or even persuasive for several reasons: (a) Our record does not reveal the chemical content of the herbicide used was one governed by the Act; (b) the Supreme Court expressly reserved the question of the applicability of the Act for later determination;[9] and (c) the text of the Restatement has been changed materially since the intermediate court spoke in *Leonard*.[10]

Nor did plaintiff seek any fact findings by the jury as to the applicability of Re-

---

a venue appeal where again the trial court's implied finding of negligence against the spraying pilot was found to be supported by the evidence.

7. In *Schronk*, the court relied upon the rule set out in Restatement (Second), Torts 2d, § 159(2): "Flight by aircraft in the air space above the land of another is a trespass if, but only if, (a) it enters into the immediate reaches of the air space next to the land, and (b) it interferes substantially with the other's use and enjoyment of his land."

8. The quotation from the opinion reads: " 'The words "inherently dangerous work" are used to indicate * * * that the nature of the work itself, or of the instrumentalities which must necessarily be used in doing it, * * *, *if unskillfully and carelessly done* [or used], involves a grave risk of serious bodily harm or death.' " The brack-

eted words were inserted by the Texarkana Court, and we have supplied the emphasis.

9. The Supreme Court said in *Leonard*: "We do not pass on the holding of the Court of Civil Appeals that 'In the Herbicide Control Act the Legislature by implication declared the use and application of such herbicides to be inherently dangerous.' We reserve this question until it is controlling in a case before us." 366 S.W.2d at 929.

10. Restatement (Second), Torts 2d, § 427 (1965), now reads: "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger,"

statement (Second), Torts 2d, § 165 (1965), reading:

"One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, and only if, his presence or the presence of the thing or the third person upon the land causes harm to the land."[11]

The jury failed to find that either defendant recklessly or negligently sprayed chemicals upon plaintiff's lands; and, as indicated earlier, plaintiff did not request any issues as to either reckless conduct or the pursuit of an "abnormally dangerous" activity, as illustrated in Comments d and e under the quoted section.

Even if we were inclined to adopt the *revised* text of § 427 of the Restatement, which plaintiff does not urge upon us as a ground of affirmation, it is readily apparent that a fact issue is presented: Was the physical harm caused to such others (the plaintiff in this case) by the contractor's failure to take "reasonable precautions against such danger"? We bear in mind that the jury failed to find the contractor was negligent and plaintiff did not seek an issue as to whether the contractor did or did not "take reasonable precautions."

■ If plaintiff were to prevail upon the Restatement theory (as set out in either § 165 or in § 427, supra), it was incumbent upon him to request issues thereon. Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529, 531 (Tex.1965), wherein the Court said:

"Under the provisions of Rule 279, Texas Rules of Civil Procedure, an independent ground of recovery or defense not conclusively established by the evidence is waived if no issue is given or requested."

See also, Denton Publishing Company v. Boyd, 460 S.W.2d 881, 885 (Tex.1970);

Melody Home Manufacturing Company v. Morrison, 502 S.W.2d 196, 200 (Tex.Civ. App., Houston—1st Dist., 1973, error ref. n. r. e.).

Donald Stapels, a forester employed by the Texas Forest Service with a Bachelor of Science in Forestry, testified to a "controlled observation" of chemical spraying of overhanging limbs on a pipe line right-of-way in Tyler County. Three quarter-mile sections of the right-of-way made up the controlled area with two being sprayed with Ammite (Ammonia Sulphate, an "organic herbicide") with the intervening section unsprayed. The purpose of the controlled observation was to determine "what effect this spraying would have on the trees' physiology itself." He detailed his observations after the experiment had been made saying that after a year and a half:

"[W]e saw major limb fall beginning; no evidence of sprouting; no indication of beetles on the treated area; the check area had none of this indication on any of these observations."

In short, he said that the beetle infestation in the controlled area was similar to that in the uncontrolled area.

At best, plaintiff introduced evidence which would have raised a fact issue upon the trespass theory. He did not conclusively establish that either of the defendants was liable, as a matter of law, for his damage under the authorities heretofore noted.

Plaintiff procured no findings of negligence on the issues requested. If Restatement § 427 is to be held applicable, Sun was not shown to have known of the inherent danger nor was it shown conclusively that the contractor failed "to take reasonable precautions against such danger." If Restatement § 165 is found to state the applicable rule, the record does not show *conclusively* that either Sun or Mobley: (a) did the spraying "recklessly or negli-

11. The courts of several states have adopted § 165, supra, as applicable to aerial crop dusting. Most of these cases are cited in Loe

v. Lenhardt, 227 Or. 242, 362 P.2d 312 (1961).

gently," or (b) that the damage was "a result of an *abnormally* dangerous activity."

■■■ Thus, the right to recover upon the theory of trespass was waived. Texas Rules of Civil Procedure, rule 279; Glens Falls Insurance Co. v. Peters, supra. The trial court erred in setting aside and disregarding the jury's answers upon the negligence issues, as well as that finding Mobley to be an independent contractor. The defendants were entitled to judgment upon the findings of the jury. Vrazel v. Bieri, supra (294 S.W.2d at 152); Pitchfork Land and Cattle Co. v. King, supra (346 S.W.2d 598).

There is yet another cogent reason why plaintiff may not prevail: the trial court was not authorized to set aside the findings of the jury and enter judgment upon the remaining findings. There was evidence supporting the finding that Mobley was an independent contractor; and even plaintiff does not contend that there was no evidence supporting the jury's nonfindings on the negligence issues.

■■■ Plaintiff simply failed to carry his burden of establishing negligence on the part of the defendants. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.1966). The findings of the jury may be set aside only after a determination that "there is no evidence on which the jury could have made the findings relied upon." Leyva v. Pacheco, 163 Tex. 638, 358 S.W. 2d 547, 550 (1962); C. & R. Transport, Inc. v. Campbell, supra. Or, stated differently in Eubanks v. Winn, 420 S.W.2d 698, 701 (Tex.1967):

"A judgment notwithstanding the verdict is authorized under Rule 301 only when a directed verdict would have been proper; and *special issue findings may be disregarded which are immaterial or have no support in the evidence.*" (emphasis supplied)

See also, Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 276 (1958); Burt v. Loc-

hausen, 151 Tex. 289, 249 S.W.2d 194, 199 (1952).

Having examined the record carefully, we are of the opinion that none of the issues disregarded by the trial court were immaterial and that each jury finding was supported by competent evidence having probative value. For this additional reason, the trial court erred in rendering judgment for the plaintiff.

In order that our action may be tested under the appropriate standards, we sustain defendants' points of error numbers one, three, and five, and overrule plaintiff's similarly numbered counter-points.

Plaintiff has no protective cross-points to vitiate the jury's verdict or to prevent an affirmance of the judgment had one been entered on the verdict. We have no alternative, therefore, but to reverse the judgment of the trial court and to render judgment for the defendants. Jackson v. Ewton, 411 S.W.2d 715, 717 (Tex.1967). Such action makes it unnecessary for us to consider the other points of error brought forward by the defendants.

Reversed and rendered.